CITY OF SAN ANTONIO v. N. MACKEY.

Delivered June 17, 1896.

1. **Municipal Corporation—Rule as to Liability of.**
A city, in the exercise of its power to provide for public health, is liable in the event of negligence of its officers and servants in exercising such power, and its liability in such cases also extends to any act of wrong or trespass committed by authority or direction of the city.

2. **Same—Injury to Private Property by Deposit of Garbage.**
A city is liable to the owner of property where it causes refuse matter to be deposited on his ground, thereby injuring him, though the act may not amount to a nuisance.

3. **Same—Ordinance not Requisite.**
The city cannot deny its liability under such circumstances because it had not by some formal act or ordinance of its council designated the property as a place of deposit.

4. **Same—Liability of Joint Tort Feasors.**
The fact that other persons acted together with the city in creating or carrying on the nuisance or trespass by the deposit of garbage, will not afford the city a defense, in whole or in part, since each of several joint tort feasors is liable for the entire damage.

5. **Same—Measure of Damages.**
Where damages are claimed as resulting from a city having used plaintiff's lands and those adjacent as a dumping ground, it should be assumed that such damage will not be permanent, since it may be abated by the removal of the deposit, or by the action of the elements; and the measure of damages is the loss of rental value up to the time of trial, and such other accrued special damage as may be shown, including certainly the necessary cost of removing the deposit from plaintiff's own land.

**6.  Same—Liability for Failure to Exercise Corporate Powers.**

It seems that a city is not liable in damages for the mere failure to exercise a corporate power or to enforce its ordinances; but see City of Fort Worth v. Crawford, 74 Texas, 408.

APPEAL from Bexar.    Tried below before Hon. S. G. NEWTON.

*R. B. Minor*, for appellant.—1.    A city is not liable in damages for injuries resulting from its acts, omissions or negligence in connection with its public and governmental or police power and duty to take steps for the preservation of the public health; nor is it liable for damages resulting from injuries received from the acts, omissions or negligence of officers and employes appointed and employed in obedience to its charter to perform said public duty; such officers and employes being not the servants nor the agents of said city, but public servants performing a public duty.    Whitfield v. City of Paris, 84 Texas, 431; Rusher v. Dallas, 83 Texas, 151; Galveston v. Hemmis, 72 Texas, 558; Galveston v. Posnainsky, 62 Texas, 132; Corsicana v. White, 57 Texas, 382; Peck v. City of Austin, 22 Texas, 263; Keller v. Corpus Christi, 50 Texas, 614; Harrison v. Columbus, 44 Texas, 420; Givens v. City of Paris, 24 S. W. Rep., 974; Prather v. Lexington, 13 B. Mon., 559; Western College v. Cleveland, 12 Ohio St.; Wheeler v. Cincinnati, 19 Ohio St., 19; 2 Am. Rep., 368; Heller v. Sedalia, 53 Mo., 159, 161; 14 Am. Rep., 444; Maximillian v. New York, 62 N. Y., 160; 20 Am. Rep., 468; Burrill v. Augusta, 78 Me., 118; 2 Dillon, Mun. Corps. (4 ed.), secs. 974, 975, 976, 978, 1196, note; Cumberland v. Wilson, 50 Md., 138.

*Upson & Bergstrom*, and *W. W. King*, for appellee.—1.    The appellant city is liable in damages for using the property of appellee as a dumping ground for garbage.    Ft. Worth v. Crawford, 65 Texas, 202; 74 Texas, 404; Sherman v. Langham, 12 S. W. Rep., 1042; Hillsboro v. Ivy, 20 S. W. Rep., 1012; Thurston v. St. Joseph, 11 Am. Rep., 463; 1 Dillon on Mun. Corp., 448, note.

2.    The appellant city is liable for the acts of its scavengers in carelessly and negligently dumping garbage on appellee's lands and the land of others adjoining, and allowing same to remain unburied.    Briegal v. Philadelphia, 20 Am. St. Rep., 885; Harper v. Milwaukee, 30 Wis., 365; Pittsburg v. Green, 22 Penn. St., 54; Brown v. New York, 3 Barb., 254; Mootry v. Danbury, 55 Conn., 550; Thayer v. Boston, 31 Am. Dec., 157; People v. Albany, 27 Am. Dec., 95; State v. Shelbyville, 4 Sneed, 176; Wharf Co. v. Portland, 24 Am. Rep., 3; Hagg v. Commissioners, 60 Ind., 511; Nebbett v. Nashville, 27 Am. Rep., 755; Sample v. Vicksburg, 52 Am. Rep., 181; Brayton v. Fall River, 18 Am. Rep., 470; and cases cited above.

3.    It is not necessary for the appellee to bring home to the knowledge of the defendant city its failure to perform its municipal duties. The law will presume notice where the failure is notoriously open to

observation, and remained so a sufficient length of time, that its existence should be known.   Ringlestein v. San Antonio, 21 S. W. Rep., 634; Pool v. City of Jackson, 23 S. W. Rep., 57; Belton v. Turner, 27 S. W. Rep., 831.

JAMES, Associate Justice.—Appellee, owner of several lots in the city limits, brought suit against the city for damages to his property arising from the use for a number of years of certain of his lots and other lots as a dumping place for refuse matter.

The petition alleged that on one of plaintiff's lots (No. 178), containing twenty-four acres, he had his residence, and that defendant had deposited on plaintiff's other lots and on adjacent lots belonging to others, carcasses of dead animals, decayed animal and vegetable matter, night soil, garbage, filth and refuse matter of every description and suffered the same to remain, wherefrom noxious and unhealthy odors and stenches arose, rendering said lot and other property in the neighborhood unhabitable, which compelled plaintiff to move from the lot, and rendered the same unfit to reside upon.   In respect to this lot plaintiff asked damages based on the rental value of such lot.

In regard to one of his other lots (lot 185 of twenty-four acres) he alleged that defendant had deposited and still continues to deposit tin cans, scrap iron, broken bottles, glass, tin and leather clippings and trash of every description, whereby the entire surface of the lot is cov-. ered several feet in depth and rendered worthless, and for this he claimed damage in the value of the lot.

The plaintiff's lots other than No. 178,—the residence lot,—had from said causes been greatly depreciated in value, and in respect to these, he asked damages for diminution in value.

The District Court applied the rule which has been adopted by the Supreme Court, in reference to special injury resulting to the citizen from the creation and maintenance by the city of a dumping place for refuse matter, from which noxious odors emanate.   A city in the pursuit of its power to provide for the public health is liable in the event of negligence of its officers and servants in exercising such power. The cases show that in arriving at this result due consideration was given to the distinction in this connection between acts of the city done in its strictly governmental capacity, and acts not of that class.   City of Fort Worth v. Crawford, 64 Texas, 202, and 74 Texas, 404.   This makes it unnecessary for us to discuss the question.   We believe that the city's liability in such cases extends to any acts of wrong or trespass committed by authority or direction of the city, as well as to mere negligent acts of its servants.   In other words, applying this to the facts of the case we are of opinion that a city is liable to the owner of property where it causes refuse matter to be deposited on his ground, thereby injuring him, although the act may not amount to a nuisance.

There was testimony in this case which went to show that the city had for years used this locality as a dumping place, and certainly there

was sufficient evidence to warrant a finding that this was done by its authority and direction, even though there may have been no ordinance or resolution on the subject. It can hardly be maintained that in causing the refuse matter of the city to be removed during a number of years, the city did not connect itself with and become a party to and authorize the act of depositing the same in a particular place, and under such circumstances it should not be allowed to deny its liability for the reason that it had not designated this as a place of deposit by a formal act of its council.

There was testimony to show that individuals having no connection with the city government also used this as a dumping ground from time to time, and in this connection it seems to be contended that the city, if liable at all, should not be held except so far as it contributed to the injury. In our opinion this fact would not diminish the liability of the city. If it acted with others in creating or carrying on the nuisance or trespass, we do not see how it would be practicable to enforce a rule separating the liability of the city from that of the others, but on principle each tort feasor would be held for the entire damage.

The charge of the court indicates that certain items for damages were abandoned or not insisted on by the plaintiff. These were damages for loss in respect to the sale of lots, and damages for the mere deposit of substances on plaintiff's lots. The charge submitted the case on the issue of whether or not the defendant, its agents or servants, made the deposit, and did so negligently, causing the bad odors alleged. It will be seen that the damage which the charge confined the jury to was that which resulted from the nuisance arising from the noisome odors. Plaintiff asked no further submission of issues and it must be assumed that he was satisfied with that submission of his case, and we take it that we need not discuss the measure of damages from any other standpoint.

In reference to this we think the measure of damages adopted by the charge was not the correct one. The jury were instructed that they should find the rental value of the residence lot, and the diminution of the value of plaintiff's other lots, caused by the foul odors emanating from the deposits. The measure last stated is the one that applies in cases where the injury to the property is of a permanent character.

It is impossible to give a reason why, under like conditions, one rule should be adopted in reference to the residence lot and a different one to the other lots. The question to determine is, whether or not this belongs to the class of cases in which the injury can be taken as permanent in its nature, and we are of the opinion that it cannot. As stated in Rosenthal v. Railway, 79 Texas, 325, 15 S. W. Rep., 268, "The controlling rule in actions for injuries resulting from nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the party is entitled when the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any

agency, the damages which have accrued only up to the time of the action will be allowed, but if the injury is permanent and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In such case the resulting depreciation in the value of the property is the safest measure of compensation."

We regard this as a clear statement of the law on the subject, sustained by cases too numerous to require citation.

In Railway v. Baugh, 80 Texas, 58, it is stated: "When a nuisance is created by the construction of works in their nature permanent and which, as sometimes occurs in case of works for a public use, are not subject to be abated, the rule is that all damages resulting therefrom to property may be recovered in one action, and the proper measure of damages is the depreciation in the value of the property. Rosenthal v. Railway, 79 Texas, 325; Railway v. Hall, 78 Texas, 169. That rule also applies when the injury resulting from the nuisance is of a permanent character. But when the nuisances complained of are of a temporary character—such as may be voluntarily removed or avoided by the wrongdoer, or such as the injured party may cause to be abated, only such damages as have accrued up to the institution of the suit or (under our system) to the trial of the action can be recovered. . For such damages depreciation in the value of the property affected by the injury is not a measure; and in such a suit the amount of such depreciation can not be recovered."

This language is peculiarly applicable to the present case. The deposits being within the corporate limits may be removed by the city, and the cause of the nuisance abated, and plaintiff at any time since the origin of the nuisance, might have had it abated, had he seen fit to do so.

It is entirely reasonable to say that odors emanating from such deposits as were made in this instance, are not permanent, and that they must abate by action of the elements. The contrary of this is not a reasonable or admissible proposition.

The court, by adopting as the measure of damages the decreased value of the lots, virtually assumed that the presence of the odors constituted a permanent damage to the property. If the matter was fairly a question of fact, it should have been left to the jury; but in our view of the nature of the case as shown by the testimony, the court should have assumed that the injury arising from the odors was not of a permanent nature, and should have confined the damages to the loss of rental value up to the time of trial, and other special damage shown, if any had accrued, leaving the plaintiff to collect his future damage, if any, by subsequent actions.

All we mean to say in this connection is, that, as the case was presented to the jury on the issue of damage proceeding from the noisome odors, the damage should not have been estimated on the theory of a permanent injury to the freehold. Plaintiff would not be limited in his recovery to the loss of rental value, if he could show wherein he had

sustained other special injury, the natural and proximate result of the act. Had the deposits been made upon plaintiff's land only, it is clear that the measure of damages would have been the cost of removing the same, together with any injury accruing to the rental value of plaintiff's property occasioned thereby, and all his damages would have been capable of being redressed in one action. From the fact that the deposits which emitted the offensive odors extended to the property of others over which plaintiff had no control and had no right to enter for the purpose of removing same, such measure would not afford him adequate reparation. But he certainly would be allowed to recover in this suit, in addition to the impaired rental value of his property, the necessary cost of removing the deposits from his own land.

The defendant objected to the testimony that was offered to show the decreased value of the land and assigns its admission as error, and for the admission of such evidence and the erroneous charge touching the measure of damages, we think the judgment must be reversed.

In reference to the seventeenth assignment of error, although a contrary rule from Wood on Nuisances, sec. 744, is quoted with approval in the case of Fort Worth v. Crawford, 74 Texas, 408, yet it seems to us that a city is not liable in damages for the mere failure to exercise a corporate power or to enforce its ordinances. Dillon, Mun. Corp., secs. 950, 951. The rule of liability governing this case is that the city is liable when it undertakes a public work, such as removing garbage, and does it in an improper manner, causing thereby some injury to the individual.

The court did not err in admitting the testimony complained of by the eleventh and thirteenth assignments. The testimony tended to show, in connection with the other evidence, that the use of this locality for a dump yard was the act of the city.

There was no error in admitting the testimony of plaintiff, Simmang and Wallace, referred to in the twelfth assignment. This testimony was in substance that Simmang and Wallace were engaged as individuals in the business of carrying night soil from the city and used this ground as a place of deposit. It appears from the testimony that there was a city officer known as superintendent of scavengers, who directed all deposits to be made at this place. This tends to connect the city with creating and maintaining the nuisance, and with the act of the private scavengers, and the evidence was proper. So also was the evidence mentioned in the fifteenth, sixteenth, eighteenth and nineteenth assignments. It appears unnecessary to discuss the assignments further.

*Reversed and remanded.*