## CITY OF SAN ANTONIO v. ESTATE OF N. MACKEY.

### Decided November 15, 1899.

**1. Municipal Corporation—Liability for Depositing Garbage—Nuisance.**

A city is liable for the action of private scavengers licensed by it and acting under the direct control and authority of its superintendent of scavengers in making deposits of garbage on and near the property of a citizen.

**2. Same—Notice to Mayor.**

It was competent to prove that the mayor knew of the nuisance that existed on the premises of plaintiff, since notice to him was notice to the city.

**3. Same—Injury Not Permanent.**

Where the deposit of garbage on land causes no permanent injury to the soil, and there is no evidence that the odors created by it will be permanent, no recovery can be had for loss on the ground of permanent injury to the property.

**4. Same—Measure of Damages.**

The measure of damages for injury caused by depositing garbage on land, such injury not being permanent in character, is the difference in the rental value of the property with and without the nuisance, with any incidental damages such as the cost of removing the nuisance, and of taking care of the premises when not rented because of its existence there.

**5. Nuisance—Evidence of Damage Too Speculative.**

The opinion of a witness as to permanent depreciation in the value of land resulting from a nuisance thereon, based on the theory that the locality had lagged in the race for value while the nuisance was in existence, is too speculative.

APPEAL from Bexar.    Tried below before Hon. J. L. CAMP.

*Geo. C. Altgelt* and *R. B. Minor,* for appellant.

*Upson & Newton* and *W. W. King,* for appellee.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by N. Mackey against the city of San Antonio to recover damages caused by the deposit of garbage and refuse matter on land belonging to him within

the limits of the city.    Upon the first trial of the case Mackey recovered judgment, from which an appeal was perfected to this court, and the judgment was reversed.    City of San Antonio v. Mackey, 14 Texas Civ. App., 210.    The trial from which this writ of error originated resulted in a verdict and judgment in favor of N. Mackey in the sum of $6265. It was shown by allegations in the petition for writ of error that since the rendition of the judgment N. Mackey had died, leaving a will by which he had devised and bequeathed all of his property to Mrs. Mary J. Mackey, who had, by the will, been made independent executrix of its provisions.

The assignments of error from the first to and including the eighteenth, embody in effect but one proposition, namely, that the appellant was not liable for the acts of private scavengers who had dumped the garbage and filth upon the premises of N. Mackey.    This contention of appellant has been settled against it in the former opinion in this case, where the matter was exhaustively treated, and another discussion of the question would be productive of no good.    It may be well to say in this connection that the private scavengers licensed by the city acted under the direct control and authority of the city's superintendent of scavengers, who was acting within the scope of his authority.    It was competent to prove that the mayor knew of the nuisance that existed on the premises of the plaintiff, because notice to him was notice to the city over which he presided.    Nichols v. Boston, 98 Mass., 39.

The recovery of damages is sought in this case on the ground that the stenches and odors arising from the deposits of garbage and filth made by the city had rendered the dwelling of the plaintiff untentable, thereby destroying its rental value and permanent depreciation in the value of the property by reason of the odors and the reputation as to unhealthfulness acquired therefrom.    It is not alleged that there was any permanent injury to the soil by reason of the deposits, but the claim for damages is made to rest upon the existence of the stench arising from the garbage.    It follows that unless the cause of the odors is of such a nature that it can not be removed there could be no permanent damage. There is no evidence that tends to prove that the odors are permanent in their injury, and on the other hand N. Mackey admitted on the stand that a few years would overcome the odors without any attempt to remove the deposits, and the land be worth about as much as it was before. The uncontradicted testimony of Gresham was to the effect that two or three weeks before the trial he had visited the land and found no offensive odors.    The visits of Efron, Russ, Young, Dougherty, and Oge were made three or four years before the trial.    The suit was instituted in 1895, and before that time the city had made efforts to abate the nuisance. There was no testimony to the effect that the nuisance could not be abated, and it was stated by the plaintiff that it was abated as to one lot, number 185, and that while the city had not properly done the work of removing the nuisance from 189, there was no smell from it.    The testimony clearly established the temporary character of the nuisance, and

independent of the testimony, experience and reason would seem to teach that in the very nature of things deposits made on or near the surface can be removed. As said by this court in its former opinion, "the contrary of this is not a reasonable or admissible proposition." Such being the case presented by the evidence, the depreciation in the market value of the land was not the measure of damages, and the charge presenting that issue to the jury can have no other tendency than that of misleading them. As to a nuisance capable of abatement, the depreciation of the value of the property can have no applicability. The settled rule of damages in such cases is the difference in the rental value with and without the nuisance. Comminge v. Stevenson, 76 Texas, 642; Francis v. Schoelkopf, 53 N. Y., 152; Fairbank v. Nicholas (Ill.), 47 N. E. Rep., 360; Ruff v. Rinaldo, 55 N. Y., 664; Jutte v. Hughes, 67 N. Y., 267; Gas Co. v. Thomas (Neb.), 59 N. W. Rep., 925.

Of course there are other items of damages incidental to the matter which might arise, such as, in this case, the item of hiring some one to care for the property when it could not be rented by reason of the nuisance, and the amount that would be required to remove the nuisance. The loss of rental value up to time of trial, and the two items just mentioned, are the only ones under the facts contained in this record which N. Mackey showed himself entitled to recover.

The jury returned a verdict not only for loss in rental value and care of premises, but for $3732.55 "for depreciation of property." The verdict was clearly erroneous, and was in effect allowing double damages, but it is in direct response to an instruction to the effect that in case they found the injury permanent, the measure of damages, in addition to the rental value thereof, was the depreciation in the market value of the property. The loss of rental value is never made a part of the damages where there is permanent damage to the value of the property, because full compensation is given by the recovery of the loss in value of the land. In a case decided by the Supreme Court of Pennsylvania, cited by Sutherland in his work on Damages, section 1042, it was said that "damages for use must not represent in any part the damages for the permanent injury. It is the duty of the court to see that one does not overlap the other." Seeley v. Olden, 61 Pa. St., 302. "If land is permanently injured by the negligence or wrongful act of another, but the value is not totally destroyed, the owner would be entitled to recover the difference between the actual cash value at the time immediately preceding the injury and the actual cash value immediately after the injury, with legal interest thereon at the time of the trial." Railway v. Schofield, 72 Texas, 496; Railway v. Hepner, 83 Texas, 136.

The witness G. W. Russ was allowed to testify as to what would be the permanent damages to the land because of the nuisance having given the locality a bad reputation. The evidence was not admissible. It was a mere speculation upon the part of witness, and when cross-examined he showed that his speculation was not even based on the fact of reputation, but upon a theory that the locality had lagged in the race for

value while the nuisance was in existence. If it had been held back by the nuisance, that will be compensated for in the loss of rental value. There is authority to the effect that the owner of land is not entitled to recover in addition to depreciation of rental value, because of a prejudice which exists against the property by reason of a nuisance, even in a case where it is a permanent one. Suth. on Dam., sec. 1048, and authorities cited. In this connection we call attention to Bradner on Evidence, chapter 19, section 4.

It was alleged that the garbage was removed from certain lots to lot 189, and there partially buried, and the allegation was sustained by proof, and we can see no force in the objection to the ordinance or resolution that permitted remuneration to its owner for its use.

We have passed upon all matters deemed of importance, and do not think it incumbent upon the court to discuss each of the forty-three assignments insisted upon by appellant. In regard to the question of the city being liable as a joint tort feasor, as the court instructed the jury, we are, on the ground that it was fundamental error, asked to express an opinion. This court has fully expressed itself on that question in its former opinion, and a reiteration would serve no good purpose.

The judgment is reversed and the cause remanded.

### ON MOTION FOR REHEARING.

It is suggested by appellee that, the jury having returned a verdict for separate items of damages, so that the amount found for rental value of the premises and for care of the same can be easily separated from the amount found for permanent injury, this court should render judgment for that amount. There is sufficient testimony to establish the amount, as found by the jury, of the rental value at $2212.45, and for care of the property while vacant, at $320, and if appellee will enter a remittitur within ten days for the amount given for permanent depreciation in value of the premises, the judgment will be affirmed as to the other items of the verdict; if not, the motion for rehearing will be overruled and the judgment reversed and the cause remanded.

*Affirmed upon remittitur entered.*

Writ of error refused.