## CITY OF AUSTIN v. BUSH.   (No. 6692.)*

(Court of Civil Appeals of Texas. Austin. Jan. 23, 1924. Rehearing Denied Feb. 27, 1924.)

**1. Nuisance ⬳50(1)—In suit for damages for permanent nuisance no recovery of damages from temporary one.**

Where an owner brought a suit for damages upon the theory that the nuisance was of a permanent character and that he was entitled to recover, for all time, the damages sustained by such nuisance, he would not be entitled to a recovery of such injury as his property had sustained up to that time by reason of a temporary nuisance.

**2. Nuisance ⬳50(1) — Measure of damages for permanent and temporary.**

The measure of damages for a permanent nuisance is the depreciation in the market value of the property injured, while in the case of a temporary nuisance it is the depreciation in the market rental value of the property injured, and such other accrued special damage as may be shown.

**3. Trial ⬳350(1)—Court not required to submit requested issue if evidence insufficient to support.**

Where the evidence is insufficient to raise or support a requested issue as to permanency of a nuisance, the trial court is not required to submit it.

**4. Nuisance ⬳53—Jury to determine permanent or temporary character.**

While the court should determine whether a nuisance exists, it is for the jury to determine when the evidence conflicts, whether the nuisance is of a permanent or temporary character.

**5. Nuisance ⬳53—Whether sewage disposal plant constituted permanent or temporary nuisance held for the jury.**

In a suit for damages for the construction and operation of a municipal sewage disposal plant alleged to constitute a nuisance, whether the nuisance was of a permanent or temporary character *held* for the jury under the evidence.

**6. Nuisance ⬳50(1)—Rule as to permanency of nuisance inapplicable where nuisance arises from operation of sewage plant.**

The general rule that a nuisance may be considered permanent where intended to remain in

the condition in which it was erected until destroyed by the elements, and the damages are to the lands itself, is inapplicable to the operation of a municipal sewage plant, where no complaint is made against the erection of the plant, but to its operation, and the proof shows that the effort to remedy the escape of obnoxious fumes makes it a temporary nuisance.

**7. Nuisance ⬦⟿55—Plaintiff not entitled to recover without jury finding of permanent nuisance where defendant's denial put such fact in issue.**

In an action for damages for the construction and operation of a sewage disposal plant, defendant's denial put in issue the permanency of the nuisance, and, where plaintiff did not show as a matter of law that the nuisance was permanent in character, findings of the jury not embracing a finding of permanency did not entitle plaintiff to recover.

**8. Trial ⬦⟿351(2)—Court required to submit issue whether request for special issue embodies correct propositions of law.**

Under Rev. St. art. 1985, requests for special issues need not embody correct propositions of law to constitute such a request as will require the court to submit the issue, it being the duty of the court to correctly frame the issues when called to his attention and submit it to the jury.

**9. Trial ⬦⟿351(2)—Procedure of defendant held sufficient to require submission of issue as to permanency of nuisance.**

In a suit for damages from the operation of a municipal sewage plant, defendant's objection to court's charge with a motion to reform it so as to submit the issue of the permanency of the nuisance complained of, together with request for submission of two special issues involving that subject, *held* sufficient to require the court to frame and submit under Rev. St. art. 1985, the issue as to the permanency of the nuisance, even though the requested charges were not in every particular correct.

**10. Trial ⬦⟿351(2)—Court should have submitted issues as to permanency of nuisance though issue as to damages not requested.**

In a suit for damages from the operation of a municipal sewage disposal plant alleged to constitute a permanent nuisance, defendant's failure to request a special issue as to damages if the nuisance was temporary did not defeat its right to submission of the issue whether the nuisance was temporary, since, upon a finding to that effect, plaintiff's case would have failed.

Appeal from District Court, Travis County; George Calhoun, Judge.

Action by D. A. Bush against the city of Austin. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

J. Bouldin Rector, City Atty., of Austin, for appellant.

White, Wilcox, Graves & Taylor, of Austin, for appellee.

## Statement.

BLAIR, J. Appellee, D. A. Bush, brought this suit against the city of Austin, appellant, for the recovery of damages alleged to have been sustained on account of the depreciation in the value of his property by virtue of the presence of certain noxious gas, odors, etc., caused by the construction and operation of a sewage disposal plant by appellant near his premises, which he used as a homestead for himself and family. Appellee's petition alleged that the sewage disposal plant so constructed and operated by appellant emitted noxious, foul, and unwholesome gases, vapors, and odors, such as would cause discomfort and distress to persons of ordinary sensibilities and ordinary tastes and habits, and that they so affected plaintiff and his family, thereby constituting a nuisance, and by reason thereof plaintiff's home or residence has been greatly damaged and the value thereof greatly depreciated in the sum of $5,000.

Appellant answered by general and special exceptions, and by a general denial.

The case was tried to a jury upon special issues, and the trial court based the judgment rendered for appellee upon said verdict.

Appellant has duly perfected its appeal in the manner provided for municipal corporations.

## Opinion.

We agree with the conclusion asserted in appellant's brief that this appeal involves, generally, but the one question: Did the evidence create the issue of fact as to whether the nuisance complained of by appellee was permanent or temporary in its character so as to necessitate the submission of the issue to the jury?

The following are the special issues propounded to the jury, and their answers thereto:

"Question No. 1: Do foul and noxious gases, vapors, or odors emanate from the sewage disposal plant operated by the city of Austin? Answer: Yes.

"Question No. 2: Do such gases, vapors, or odors (if any) reach the premises of the plaintiff in such manner as to disturb and annoy the plaintiff and his family? Answer: Yes.

"Question No. 3: If you answer question No. 2 in the affirmative, then answer this question: Would such gases, odors or vapors so disturb and annoy persons of ordinary sensibilities and ordinary tastes and habits located as the plaintiff? Answer: Yes.

"Question No. 4: What would be the reasonable market value at this time of plaintiff's lots and improvements should the operation of the sewage disposal plant permanently cease? Answer: $5,600.

"Question No. 5: What is the reasonable market value at this time of plaintiff's lots and improvements with the sewage disposal plant continuing to be operated at the place where it is now located? Answer: $3,350."

---

⬦⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The answers of the jury are sufficiently supported by the evidence.

Appellant presented the following written objections to questions 4 and 5 submitted by the trial court, and moved that an additional issue be submitted to the jury:

"(2) That both of said questions are predicated upon the assumption by the court that the proof has established, as a matter of law, that the operation of the sewage disposal plant by defendant is a nuisance permanent in its character, and the damage, if any, to plaintiff resulting or incident to the operation of said plant would be of a permanent nature, whereas the defendant has offered proof to show that said plant can, and in good faith will, be improved and operated in the future, so as not to permit noxious gases, odors or vapors to emanate therefrom, and that defendant has already voluntarily begun and has progressed to a great extent toward remedying any nuisance that may have existed or that may now exist on account of such operation; and, at the least, that the testimony in this case has created the issue of fact to be submitted to the jury, as to whether, if any nuisance exists by the operation of said plant, same is or will be of a permanent or of a temporary character.

"In this connection, defendant respectfully suggests to and moves the court that an additional question be submitted to the jury, containing the issue as to whether such nuisance, if any, is permanent or temporary in its character, and that the other questions contained in the general charge should be reformed so as to properly conform to such additional question.

"(3) That said questions are prejudicial to defendant and misleading to the jury, in that they would be taken to assume that the mere continued operation of the sewage disposal plant would be such a nuisance as to affect permanently the market value of plaintiff's premises, irrespective of whether or not same would or might be operated so that no noxious vapors or odors would reach plaintiff's premises in such manner as to disturb and annoy him and his family."

This objection and motion were overruled by the court.

In addition to the above objections and suggestion, appellant requested the court to submit its two special charges to the jury, which, omitting the formal parts, are as follows:

Special charge No. 2: "If you answer questions 1, 2, and 3 of the general charge in the affirmative, then answer this question: Can such gases, odors, or vapors be prevented by defendant from so disturbing and annoying plaintiff and his family during the operation of the sewer disposal plant?"

Special charge No. 3: "If you answer questions 1, 2, and 3 of the general charge in the affirmative, then answer this question: Will such gases, odors, or vapors continue to disturb and annoy plaintiff and his family, as now located, as long as the sewer disposal plant is operated at the place where it is now located?"

These charges were refused by the court.

Appellee takes the position generally that the question involved, as stated by appellant, is not quite so broad, and makes the following counter propositions:

"First: That the evidence was not sufficient to raise the issue that the nuisance was merely temporary.

"Second: That the verdict of the jury was, in effect, a finding upon all facts necessary to entitle plaintiff to recover damages as for a permanent nuisance.

"Third: That the special issues requested by appellant, and through which it sought to have submitted to the jury the character of the nuisance as being permanent or temporary, were incorrect charges, and the court did not err in refusing to give them.

"Fourth: If the findings of the jury in response to the issues submitted by the court were not sufficient to constitute findings that the nuisance was permanent, then (appellant having requested no proper charge submitting the issue) the issue will be deemed to have been found by the court in such manner as will support the judgment."

[1] It is evident, from an examination of the main charge given by the court, that it was submitted in its entirety upon appellee's theory of recovery. It is also evident that in submitting the issues finding the amount of damages sustained, the court assumed as a matter of law that the evidence established a permanent nuisance, if the jury answered the three preceding questions favorable to appellee. Appellee's petition discloses that he brought his suit upon the theory that the nuisance was of a permanent character, and that he was entitled to recover at once and for all time such damages to his premises as had been occasioned by the permanent nuisance alleged. Under this pleading he would not have been entitled to a recovery of such injury as his property had sustained up to that time by reason of a temporary nuisance. Baugh v. Railway Co., 80 Tex. 56, 15 S. W. 587. Appellant simply denied that it was maintaining or operating a permanent nuisance. It introduced proof tending to show that it had abated the nuisance, or that the matters complained of by appellee were occasioned by carelessness of employés or accident, and were therefore of a temporary character. It made the effort above mentioned to have the issue of whether the nuisance complained of was of a permanent or temporary character submitted to the jury. The court refused the request; which action we think undoubtedly was error, if appellant has properly raised the question, and if the evidence is conflicting on the issue of the permanent or temporary character of the nuisance.

[2] The rule is well settled in this state that the measure of damages in case of a permanent nuisance is the depreciation in the market value of the property injured; while the rule is as well settled that the measure of damage in case of a temporary nuisance is the depreciation in the market rental value of the property injured, and

such other accrued special damage as may be shown. 13 Michie's Digest, pp. 579–582, and cases cited. Also see each annual of this Digest discussing nuisances; Baugh v. Railway Co., 80 Tex. 56, 15 S. W. 587; Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237.

[3, 4] Having thus stated the case and the propositions involved, we come to a discussion of the main issue raised by this appeal: Was the evidence sufficient to raise the issue that the nuisance was only temporary? Of course, if the evidence is insufficient to raise or support the issue requested, no error can be predicated upon the refusal of the trial court to submit it; to the contrary, it would have been error for the court to have submitted the issues under such circumstances.

We will not undertake to set forth all the evidence relating to the effort on the part of appellant to abate the nuisance, and as to its temporary character, but will state just so much of it as we think necessary to this issue. It may be admitted that appellee made a strong case that the nuisance complained of was permanent in its nature and mode of operation. On the other hand, appellant presented strong evidence that it had in fact abated the nuisance to the extent that only in instances of accidents or carelessness on the patr of employés did it offend appellee as charged in his complaint, and therefore it was a nuisance temporary in its character. It has been the universal holding of courts, so far as we have ascertained from our research, that the court shall determine under the facts whether a nuisance exists, but that, when the evidence conflicts, it is a matter to be left to the determination of the jury if the nuisance is of a permanent or temporary character. Town of Jacksonville v. McCracken (Tex. Sup.) 232 S. W. 294; Jacobs & Wright v. Brigham (Tex. Civ. App.) 227 S. W. 249; Oliver v. Forney Cotton Oil & Ginning Co. (Tex. Civ. App.) 226 S. W. 1094; City of Honey Grove v. Mills (Tex. Civ. App.) 235 S. W. 267; Stark v. Coe (Tex. Civ. App.) 134 S. W. 373; Umschied v. City of San Antonio (Tex. Civ. App.) 69 S. W. 496; Faulkenbury v. Wells, 28 Tex. Civ. App. 621, 68 S. W. 327; City of Paris v. Allred, 17 Tex. Civ. App. 125, 43 S. W. 62; City of San Antonio v. Mackey, 22 Tex. Civ. App. 145, 54 S. W. 33; City of San Antonio v. Mackey, 14 Tex. Civ. App. 210, 36 S. W. 760; Rosenthal v. Taylor, 79 Tex. 325, 15 S. W. 268; Cumberland Torpedo Co. v. Gaines, supra, 3 L. R. A. (N. S.) 973; Irvine v. Oelwein, 170 Iowa, 653, 150 N. W. 674, L. R. A. 1916E, 997, and notes and cases cited; Shamburger v. Scheurrer (Tex. Civ. App.) 198 S. W. 1069.

[5] The sewage disposal plant complained of was completed and put into operation in November, 1918. Appellee filed his suit in August, 1922. Some attempt was made to enjoin the city from operating the plant, the exact date not being shown by the record. At the time of the hearing upon the injunction, a period of time was granted by the court to appellant's city engineer to make certain definite experiments looking to the abatement of the nuisance. As to the construction of the plant, it was according to design and plans and specifications prepared by one high in authority in this character of engineering. No contention is made that the construction of the plant created the nuisance; but that from its operation in receiving and treating the feces from the 40,000 inhabitants of Austin, noxious odors, etc., were omitted therefrom, which created the nuisance complained of. In pursuance to the order granting time to make the experiments, C. E. Leonard, the city's engineer, testified that he made numerous experiments looking to and tending to abate the nuisance. That he first tried covering the sump pit and other chambers of the plant air tight, and erected a 40-foot stack thereon, in an effort to get the gases, odors, etc., high in the air, and at a later date erected a 100-foot stack, when it was found that the lower one only partially helped. This gave some relief. That later he took up with an expert chemical engineer the possibility of deodorizing the odors, gases, etc., emanating from the sump pit by some sort of burning process. The city officials authorized such expenditure of money as was necessary. This experiment was made by constructing an air-tight cement covering over all chambers of the sewage plant, and erecting immediately over the sump pit a furnace of brick. In this furnace was placed large burners which intensely heated the bricks, and by use of a fan operated in the pit, the gases, odors, etc., were blown against these hot brick targets and their odor destroyed. After relating minutely the details of the construction and operation, the witness concluded:

"* * * And it was the prettiest working of the entire existence; those odors were absolutely killed, deodorized; it worked with perfect satisfaction. During that entire period of 8 months, I did not receive a single complaint. Then on the 21st day of June [1922] we had a bad explosion. There is more or less gas that gets in the sewage from the different filling stations and garages, and, this fire being directly over that, in the summer, when gas is most volatile, it got on those hot bricks and up she went; it blew the doors in and blow the concrete roof off, and just-paralyzed us there for several days. * * * Well, we got busy and rigged up another furnace and put our pump to working again—that was a blower—and you might say in a week's time we had things somewhat normal. Then it took quite a while for our new motor fan and pump to arrive; we sent several telegrams to try to hurry it up; it took in the neighborhood of two months to get it. This explosion occurred on June 21, and it was along about August before we got the same proposition installed which we now have, and up to the time of that explosion I had received

but one complaint, and that on October 9, * * * and it afterwards developed that it was the result of carelessness by the keeper. I went to him and asked him what the trouble was, and he said: 'I am not going to lie to you; I went down into the sump pit and forgot to close the door.' That was the only complaint that I had received from any one in that district other than Mr. Bush [appellee] in at least 18 months. * * * Through these stages of experimentation, we have now to my entire satisfaction arrived at the point where we successfully deodorized the odors, and at the time that we got some odors is due to two reasons, mainly: One is that we have been having some trouble with the current, fuses burning out, the power is weak, and, of course, if fuses blow out everything stops; and in that connection I have now some very high-power wire, 2,400 volts, and a large transformer, and we are waiting for the first norther to install it, because it will take 2 days to install it, and everything would be cut off, and if we had a south wind there would be trouble, and we are waiting now for the first norther to install the large transformer, so as to insure less chance of a fuse blowing out. Of course, if the current gives out, we can't pump the fuel, and, of course, there is bound to be trouble. As long as the plant operates and is properly operated and no door left open to allow escapage, as in the case of October 9, and we do not have to close down and cease burning, there is no odor that escapes from the plant. If the doors are kept closed and the furnace burning, it properly handles the situation without giving forth odors. I mean that, by proper handling, it consumes all the offensive odors.

"We have planned further improvements to safeguard against any further chance of odors getting to the people when the plant is open. * * * To overcome that, Doctor Schoch and I have been talking it over, and we plan to have a double door and an additional room, and have an exhaust fan in the second room so that when a man goes down in the sump pit he goes in a place with no gas in it, and when he gets ready to come out he closes the door, and the pump is turned on, and it pumps the gas into the furnace, and he can open the outer door without any danger of letting the gas escape. In other words, by arranging the two-door system, we make it possible for a man to go in there and attend to his duties without emitting any smells from the plant."

Dr. E. P. Schoch, professor of chemistry, in charge of chemical engineering, at the University of Texas, substantially reiterated the testimony of witness Leonard as to the effectiveness of this burning process to successfully deodorize these gases, etc., emanating from the plant. He concluded:

"As a scientific proposition, these gases that emanate from sewage can be burned and destroyed and deodorized perfectly."

Some 12 or 15 neighbors of appellee, living in the immediate vicinity of the sewage disposal plant, testified that when it was first put into operation the odors, gases, etc., were very offensive, but that since it had been fixed or rebuilt they had not noticed any odors or gases. These neighbors located their property in a somewhat similar position to the plant as that of appellee. Likewise did about 15 neighbors, whose property was situated in reference to the plant similar to that of appellee, testify that they had at all times been disturbed by the offensive odors emanating from the plant.

It is, therefore, clear that the evidence presents a sharp conflict whether the nuisance is of a permanent or temporary character, and the court should have submitted the issue thereon to the jury, if its submission was properly requested.

Of course, in passing upon this question we have kept in mind, as suggested by appellee, that the rule or measure of damage will be applied to a particular case that seems best adapted to do justice in that case. No cause is shown why the measure of damage should be particular in this case, or that appellee should recover the same measure of damages in the event the nuisance was either permanent or temporary. Judge Gaines, in the case of Baugh v. Ry. Co., 80 Tex. 56, 15 S. W. 587, has very clearly laid down the rule and the distinction between damages recoverable for a permanent and those recoverable for a temporary nuisance. Likewise did Judge Brown, in the case of Sherman Gas Co. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237, lay down the rule that general damages are recoverable as heretofore held in this opinion, but that special damages could be recovered if pleaded. Also see Rosenthal v. Railway Co., 79 Tex. 325, 15 S. W. 268.

Likewise have we borne in mind that the term "permanent nuisance" is often used as meaning a nuisance which is not legally abatable, as shown by the case of Brown v. Telephone Co., 17 Tex. Civ. App. 433, 44 S. W. 59. But this rule cannot apply in the instant case, where the testimony of appellant shows that it has practically abated the nuisance. Likewise have we considered the rule announced in certain cases cited by appellee, where the parties had themselves considered the nuisance as permanent; or, by the act of the tort-feasor in making no effort to correct or abate the nuisance the court might assume that it was permanent. We have no such case before us. Appellant has from the beginning made the effort to abate the nuisance in question, with the results above mentioned.

We are also of the opinion that the provisions of the Constitution which provide that the property of citizens shall not be taken or damaged for public use without adequate compensation being made therefore is not violated in this case. In such cases the owner is only entitled to recover the particular measure of damages provided by law as compensation for his property.

We have also taken into consideration the rule insisted upon by appellee that a nui-

sance is regarded as permanent when it will continue unless removed by human hands. This rule is ably discussed in the case of Harvey v. Railway Co., 129 Iowa, 465, 105 N. W. 958, 3 L. R. A. (N. S.) 977, 113 Am. St. Rep. 483.

It is truly stated in that case that the confusion which is found in the precedents arising out the rule are not so much from the statement of the governing principles as from the inherent difficulty in clearly distinguishing injuries which are original and permanent from those which are continuing or intermitting. We quote from the cases cited in this opinion the approved definition of nuisances inflicting permanent injuries:

" 'Wherever the nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause but human labor, there the damage is an original damage, and may be at once fully compensated.' This definition we still think correct; but a failure to carefully construe and apply it has led to same apparent inconsistencies in this and some other courts. It will be observed from a reading of the quoted paragraph that the term 'permanent,' so often made use of in connection with the right to recover original damages, has reference not alone to the character of the structure or the thing which produces the alleged injury, but also to the character of the injury produced by it. In other words, the structure or thing producing the injury may be as permanent and enduring as the hand of man can make it, yet if the resulting injury be temporary or intermittent, depending on future conditions which may or may not arise, the damages are continuing, and successive actions will lie for successive injuries. This thought, which is clearly implied in the quoted definition, is further elaborated in the same case (Troy v. Cheshire R. Co., supra) as follows: 'But where the continuance of such act is not necessarily injurious, and where it is necessarily of a permanent character, but may or may not be injurious, or may or may not be continued, there the injury to be compensated in a suit is only the damage that has happened.' Stating the same rule in somewhat different form, it has also been said that 'when such structure is permanent in its character and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened, and there may be as many successive recoveries as there are successive injuries.' "

The chief illustration in cases of this character seems to be the erection of dams—where in one instance by its construction it overflows the land near it permanently, and in cases where the construction of a dam only overflows the land in instances of floods. The first is considered as a permanent nuisance, while the latter is considered only as a continuing or intermitting nuisance.

Although it may be admitted that the erection of the sewage plant itself may be permanent in its nature, yet the complaint is

not of the erection of the plant, but the emitting of odors from its operation. The proof of appellant tended to show that it had now so constructed the plant that odors would only escape in cases of accident or carelessness on the part of employés. We submit that we can see no material distinction in such state of facts and in the instance where a dam is constructed so as to overflow lands in cases of intermitting floods.

[6] It is also held in the case of Irvine v. Oelwein, 170 Iowa, 653, 150 N. W. 674, L. R. A. 1916E, 995, notes and cases cited there, that as a general rule a nuisance may be considered permanent in character where intended to remain in the condition in which it was erected until destroyed by the elements, and the damages are to the land itself, especially where the erection is for a public or semipublic purpose, which rule is not applicable to the instant case, since no complaint is made against the erection of the plant, but to its operation which caused the escape of the fumes complained of, and the proof showing the effort above detailed to remedy the evil makes it a temporary nuisance.

[7] Appellee's second general counter proposition, that the answers of the jury to the questions submitted them by the court in its main charge constituted a finding upon all essential issues in this case, is not sustained. By this contention appellee insists that he made it clear in his petition that his right of action was based upon the existence of a nuisance permanent in its character, as distinguished from a mere temporary nuisance; that this intention was further shown by his prayer for damages, which were those appropriate to a recovery for a permanent nuisance, and inappropriate to those recoverable in a suit based upon a temporary nuisance; that appellant recognized that appellee's suit was one for a recovery of damages as for a permanent nuisance, in that it excepted to and sought to have eliminated from appellee's pleadings an allegation with reference to discomfort and distress of mind and body suffered by appellee's family because of the offensive odors, etc., which would be most important evidence of damage in a suit for a mere temporary nuisance. Appellee further insists that appellant only filed a general denial, which put in issue only the existence of the disagreeable nature of the odors and gases and the resulting damages, but nothing more. In this last statement lies the vice of appellee's contention. Appellee pleaded for damages for the maintenance and operation of a permanent nuisance. Appellant denied it; which denial put in issue not only the matters stated by appellee, but whether or not it was maintaining and operating a permanent nuisance. Appellant introduced proof that it had practically abated the nuisance, and that the matters com-

plained of by appellee were the result of one accident and one act of carelessness on the part of an employé, which proof, if believed by the jury, would establish nothing more than a mere temporary nuisance. If the issue had been submitted and the jury had found that the nuisance was temporary only, then appellee's suit as made by his pleadings would have failed. In other words, in order for appellee to have maintained this proposition, it was incumbent upon him to show as a matter of law that the nuisance complained of was permanent in its character. This he did not do, because the evidence is conflicting on such issue.

[8] We do not agree with appellee's third and fourth counter propositions that appellant did not properly request the submission of the omitted issue, in that the requested charges were incorrect, and that under the provisions of article 1985, the court will be presumed to have found on the issue in support of the judgment. The Supreme Court, as well as the Courts of Civil Appeals, have by numerous decisions decided these points adversely to appellee's contention.

It has been held that under this article requests for special issues need not embody correct propositions of law on the issue to constitute such a request as will require the court to submit the issue. It is the duty of the trial court to correctly frame the issue when called to his attention and submit it to the jury. Brady v. McCuistion (Tex. Civ. App.) 210 S. W. 815; Tex. Refining Co. v. Alexander (Tex. Civ. App.) 202 S. W. 131; Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132; Ft. W. Ry. Co. v. Amason (Tex. Civ. App.) 249 S. W. 1090; Cumberland Torpedo Co. v. Gaines, 201 Ky. 88, 255 S. W. 1046.

In the case of Foster v. Atlir (Tex. Sup.) 215 S. W. 955, in an opinion of section A of the Commission of Appeals, in which the Supreme Court expressly adopted the holding on the question discussed, the following language was used:

"The defendants, before the charge of the court was read to the jury, filed written objections to the issues submitted, on the ground that the case was submitted upon the wrong theory as to the measure of damages, and framed and incorporated in the objections an issue, with the request that it be submitted, requiring the jury to find the difference between the value of the property received and that given in exchange. This was, in our opinion, a sufficient request to submit the omitted issue. The statute merely requires that the request to submit an issue be in writing, and in such form as to advise the court that the complaining party desires to have the jury, rather than the judge, decide the issue incorporated in the request. Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132. The failure of the court to give the requested issue requires a reversal of the case."

In the case of Fox v. Hotel Co., 111 Tex. 475, 240 S. W. 517, the Supreme Court laid down certain broad general rules that should govern trial courts in the use of article 1985, Revised Statutes. In every instance it is incumbent upon the trial court to submit all issues raised by the pleadings and the evidence when requested in writing. Numerous cases construing the effect of this article are cited in Shepard's Texas Citations Annotated. 1923 Ed. and Supp.

[9] The correctness or incorrectness of the proposition stated in the special charge or issue requested is immaterial where the error is predicated upon the failure of the court to submit an omitted issue raised by the pleadings and the evidence, if such requested charge or issue is sufficient to notify the trial judge that the party requesting it desires the jury's and not the judge's finding on the omitted issue. Appellant contends that its objection to the court's charge with the motion to reform it so as to submit the issue of the permanent or temporary character of the nuisance complained of, together with the presentation and request for submission of the two special issues or charges involving that subject, were sufficient to notify the court that it desired the jury's finding on that issue rather than that of the trial judge; and that such procedure was sufficient to require the judge of the court to frame and submit, as provided by article 1985, Revised Statutes, the issue as to the permanent or temporary character of the nuisance, even though the requested charges might not be in every particular correct. This contention is undoubtedly correct. The charges requested are probably subject to all the objections urged by appellee against them (and should be corrected and given on another trial), and, if error had been predicated upon the refusal of the court to give them, it would not have been sustained by this court. The following authorities cited by appellee in support of his contention do not deal with error predicated upon the refusal of the court to submit an omitted issue upon written request; but some of them predicate error upon the refusal of the trial court to submit a special charge, in which event the special charge or issue requested must incorporate a correct proposition of law or fact applicable to the case. Or they deal with cases which hold that no error can be predicated upon the refusal of a trial court to submit an omitted issue where only called to the court's attention by an objection to the charge for not incorporating it in the special issues submitted. In such cases the party complaining is also required to submit a special charge or issue which at least embodies the issue omitted. Waggoner v. Zundelowitz (Tex. Sup.) 231 S. W. 721; White v. Bell (Tex. Civ. App.) 242 S. W. 1088; Pullman Co. v. Ry. Co. (Tex. Sup.) 231 S. W. 741; Town of Jacksonville v. McCracken (Tex. Sup.) 232 S. W. 294.

[10] Neither do we agree with appellee in his contention that no error can be predicated upon the fact that the court refused to submit the issue as to the permanent or temporary character of the nuisance; because it was incumbent upon appellant to submit an issue or issues incorporating the proper measure of damages, in case the jury found in response to the other issues requested by it that the nuisance was of a temporary character. Appellee sued for damages for the construction and operation of a permanent nuisance injuring his property. Appellant denied the fact, and offered proof tending to establish a temporary nuisance. If the jury should have answered that the nuisance was a temporary one, appellee's case would have failed, since his pleadings did not ask for special damages or for general damages resulting from a temporary nuisance, but only for damages for a permanent nuisance. Such pleading by the parties put in issue the permanent or temporary character of the nuisance complained of, and the court should have, upon the request in writing, submitted the issue thereby raised, if the testimony raised the issue. Fox v. Hotel Co., 111 Tex. 475, 240 S. W. 517.

We have concluded that for the error indicated in this opinion this cause should be reversed and remanded for a new trial; and it is so ordered.