## CITY OF IOWA PARK v. CAMERON.

### No. 12397.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 13, 1930.

Rehearing Denied Jan. 17, 1931.

Harris & Martin, of Wichita Falls, for appellant.

Mathis & Caldwell, of Wichita Falls, for appellee.

BUCK, J.

Mrs. I. D. Cameron sued the city of Iowa Park for damages to her land and her crops by reason of the overflow of said lands, adjacent to the sewer system of defendant city. She alleged that the defendant city was the owner of a sewerage disposal plant located on what is known as the McCleskey farm in Wichita county, Tex., and that defendant was desirous of disposing of the liquid from said disposal plant through subirrigation in loose tile laid under the ground. That the contract between her and the defendant city provided that defendant was to lay tile pipe and bring the liquid from said disposal plant to

the north line of her property and was then to distribute said liquid by a system of tile laid in ditches not less than twenty inches in depth under the surface of said land. She alleged that the contract further provided that only one-fourth of said 25 acres, the amount of land which the city leased from her, was to be first tiled, and then when it became necessary to extend said system of tile to the other part of said 25 acres of land that said extension was to be made by the defendant without cost to plaintiff. She alleged that the contract between her and the defendant city provided that the defendant was to subirrigate said land in such a way that no part of it should become waterlogged from any excess of water from such subirrigation, and should any of said land become excessively loaded with water from said subirrigation, then the defendant agreed to close the tile pipe leading under said portion and turn the water to some other portion of said land.

The contract which Mrs. Cameron made with the city of Iowa Park is as follows:

"The State of Texas, County of Wichita

"This agreement made and entered into this the 29th day of October A. D. 1925, by and between Mrs. I. D. Cameron, Wichita County, Texas, a feme sole party of the First Part and the City of Iowa Park, Texas, a municipal corporation, acting by and through its Mayor, J. C. Hines, Party of the Second Part, witnesseth:

"Whereas Party of the First Part is the owner of the following described real estate located in Wichita County, Texas, towit: (Here follows the description of the 25 acres, more or less.)

"And whereas, the party of the second part is the owner of a sewerage disposal plant located on what is known as the McCleskey Farm north of said above described lands, and is desirous of disposing of the liquid from said disposal plant through sub-irrigation in loose tile laid under the ground, and,

"Whereas, said party of the first part is desirous of having said above described lands sub-irrigated:

"Now, therefore, it is agreed as follows: Party of the second part agrees to lay tile pipe and bring the liquid from said disposal plant to the north line of said above described tract of land and thereafter distribute said liquid by a system of tile laid in ditches not less than twenty (20) inches in depth under the surface of said above described tract of land, as follows:

"Tile laid with loose joints under the surface of the ground shall be laid by party of the second part, without cost to party of the first part, in rows every twenty feet apart running east and west across said above described tract of land and the said liquid permitted to drain through said tile pipes and pass out through the loose joints of said tile to the ground.

"The northwest one-fourth of said above described tract of land shall be sub-irrigated first by said means under this agreement and thereafter party of the second part shall extend the system of tile pipes to the other portion of said land as and when the amount of liquid discharged from said disposal plant shall require additional lands to take up the liquid draining through said tile pipes from said disposal plant owned by party of the second part.

"Said party of the second part agrees to sub-irrigate said lands, in such a way that no part of said lands shall become waterlogged or injured from an excess of water from said sub-irrigation and should any of said lands become excessively loaded with water from said sub-irrigation, then said second party agrees to close the tile pipe leading under said portion and turn the water to some other portion of said land until such time as the water soaked part shall have dried out sufficiently to take water again. However, party of the second part shall not be liable for any damages to said lands resulting from excessive water or liquid unless party of the second part shall fail and refuse to immediately close said tile pipes and change the sub-irrigation after due written notice filed with the City Secretary from party of the first part to party of the second part of the condition of said land.

"Party of the second part shall have the right of ingress and egress to said lands at all times to lay said tile pipes, close the pipes, change the sub-irrigation, lay additional tile pipes and to do any and all things that may be necessary under this agreement.

"Said party of the second part shall have the right to remove the tile from said lands and abandon the sub-irrigation of said lands at any time after giving ninety days written notice to party of the first part of such intention, provided however that in removing said tile pipes or any other equipments belonging to said party of the second part from said land, that same shall be done without damage to any fruit trees or any other improvements that may be on said land, belonging to the said party of the first part save however such damage that might be occasioned by lack of moisture due to the abandonment of the sub-irrigation by party of the second part.

"Subject to the above, this agreement shall remain in full force and effect for a period of ninety nine years from this date.

"It is further agreed by party of the second part, if at any time they should remove tiling from said land or any part thereof, they will fill in any ditches that might be left from removing said tiling and leave the land in good level condition.

"In witness whereof we have hereunto signed our names on this the 29th day of October A. D. 1925.

"I. D. Cameron,
"City of Iowa Park,
"By J. C. Hines, Mayor.
"Attest: Flora Cobb, Secretary."

In the trial below the court submitted the cause of action on certain special issues, which, together with their answers, are as follows:

1. The jury found from a preponderance of the evidence that the water allowed to run in the open ditch from the sewerage disposal plant of the defendant through plaintiff's land gave off obnoxious odors.

2. That since September 23, 1927, such odors decreased the rental value of plaintiff's land other than that covered by the contract between plaintiff and defendant, dated October 29, 1925.

3. That plaintiff was entitled to $2,500 for injuries to her land, crops, etc., since September 23, 1927.

4. That the water which ran through the tile subsurface irrigation, and which came to the surface and remained in the road and on the land of plaintiff, gave off obnoxious odors.

5. That the rental value of plaintiff's land other than the land covered by the contract was decreased by reason of obnoxious odors which emanated from the water which came from the subsurface tiling system.

6. That plaintiff was entitled to recover for this injury, since September 23, 1927, the sum of $500.

7. That a portion of the water from the sewerage disposal plant, which was allowed to run down the open ditch, seeped into the well of plaintiff and injured the water, and that said well was damaged and the water rendered unfit for use.

8. That plaintiff was entitled to damages in the sum of $500 for this item of injury.

9. That the sewerage disposal plant water which was put into the tile subsurface irrigation system did not seep into the well.

10. That plaintiff did not know, and could not have known by the use of ordinary diligence, that the water brought from the sewerage disposal plant and discharged through the tile pipe would give off obnoxious odors.

From this verdict the court rendered judgment for the plaintiff and against the defendant.

The plaintiff remitted the sum of $1,000, $500 allowed by the jury for damages to her land as given in answer to issue No. 6, and also $500 allowed by the jury because of damage to her well. Defendant has appealed.

Opinion.

The defendant pleaded limitation, and the plaintiff pleaded damage to her land and crops and inconvenience to her and to her tenants, and those working upon the land; but the court instructed the jury each time the question of damage was submitted that they should consider only such damage, if any, as was inflicted since September 23, 1927. Special complaint is made of the action of the trial court in overruling the general demurrer. Plaintiff alleged that "said continued acts as herein set out on the part of the defendant and its agents constitute a nuisance to this plaintiff and to plaintiff's land, and in this connection plaintiff says that at least 260 acres of land owned by her, and which she has owned for the past several years and prior to October 1925, has been greatly damaged and that the rental value of said land has been decreased in the sum of at least Ten Dollars ($10.00) per acre per year since September 23, 1927, or a total sum of Seventy-Eight Hundred Dollars for the past two years since September 23, 1927, and for the third year beginning September 23, 1929, said Seventy-Eight Hundred ($7,800.00) dollars, being the decrease in rental value caused by the acts of defendant, its agents, servants and employees above set out."

The evidence shows that Mrs. Cameron notified the superintendent of the waterworks system of defendant city a number of times that the sewerage was being allowed to run over her land, and caused her inconvenience and damage. The evidence shows that the defendant never placed under the 25 acres covered by the lease tiling for more than 6½ acres, and had it done so, and laid tiling under the entire 25 acres, that much, at least, of the damage would have been obviated. The reason they did not lay tiling under the entire 25 acres was that they did not have the means, as stated by J. H. Anglin, superintendent of the waterworks system, and the mayor and perhaps some commissioners of the city. When the water was cut off from the submerged tiling, it was allowed to run along a ditch through Mrs. Cameron's land, and the evidence shows that it was very offensive to her and to her tenants, and that she could not get anybody to cultivate the land on account of the odors.

In a suit to recover damages for decrease in rental value of land caused by negligent operation of a sewerage disposal plant, plaintiff is not estopped from recovering damages because of the execution of a written instrument leasing another portion of her land to the operator of said disposal plant for sewerage disposal purposes.

In the case of Honey Grove v. Mills (Tex. Civ. App.) 235 S. W. 267, 270, writ of error dismissed by the Supreme Court, it is held:

"Appellant insists that appellee was estopped from claiming damages because of the written instrument in effect authorizing the use of the branch as a conveyor of the contents of the septic tank. The instrument signed on December 6, 1910, by appellee and others, reads:

"'We the undersigned property owners, grant our permission to S. G. Duff and J. H. Whatley of Greenville, Texas, their successors or assigns, to use Honey Grove creek, which passes over or along our property, as a conveyor of the contents of the septic tank to be located in the city of Honey Grove, Tex.'

"Estoppel may not be predicated, it is thought, upon the instrument, against recovering damages for the wrongful or negligent operation of the septic tank. Donovan v. Royal, 26 Tex. Civ. App. 248, 63 S. W. 1055. It is not a license against damages for any special inconvenience or discomfort or injury produced by wrongful or negligent operation or conduct that is not the natural and necessary result of the grant of the easement."

In Rosenthal v. Taylor, B. & H. Ry. Co., 79 Tex. 325, 15 S. W. 268, the Supreme Court, speaking through Justice Gaines, held, according to the syllabi, that:

"Plaintiff and others contracted to obtain for defendant company a right of way for its road through the county, and, when the road was located through streets already laid out, so much of said streets as should be requisite should be obtained from the municipal authorities. Such a right of way was procured through the street on which plaintiff's own residence was located. Held that, as the contract secures to defendant only the consent of the municipal authorities, plaintiff and his associates could not be required thereunder to procure for defendant immunity from claims for damages to property abutting on the street, and plaintiff is not estopped from maintaining an action for damages for depreciation of his property by the noise, smoke, cinders, and dust of passing trains."

In Town of Gilmer v. Pickett (Tex. Civ. App.) 228 S. W. 347, the court held that:

"The grantor to a town of an easement for the construction of a septic tank is not estopped, by his refusal to permit the town to bury the contents of the tank when it was cleaned * * * by leaving the contents on the surface of the ground, since the grant gave no right to use the premises to bury the contents."

In the case of Cane Belt Ry. Co. v. Ridgeway, 38 Tex. Civ. App. 108, 85 S. W. 496, the court, in effect, held that where the owner of land abutting on a street for a consideration gave the railroad company the right to construct its road in the street, the owner of said land could not recover damages from the railroad company for the proper use of the street by the railroad, but where the railroad company constructed a ditch along its right of way in which water stagnated and polluted the air, the railroad company was liable for damages to the owner's land because the water had become stagnated and because the air was polluted.

We do not think that the trial court erred in overruling the general demurrer. The appellant also urges that there was not sufficient proof in the record to show any decrease in the rental value of plaintiff's land. Howard Renfro, testifying for plaintiff, said that he and Jimmie Williams had purchased from plaintiff 12½ acres of land that she had theretofore leased to defendant for sewerage disposal purposes. That for the year prior, the renter contracted to pay him $300, but that he paid only $80 of said $300, and had moved off.

W. F. Barnhart testified that he knew the reasonable cash rental value of land in the vicinity of Mrs. Cameron's land, and that it was worth from $10 to $25 per acre, $10 per acre for the dry land and $20 to $25 per acre for the irrigated land; that Mrs. Cameron's land was pretty good.

B. S. Coleman testified that he had not been able to live in the house on the land at night on account of the odor, and had not been able to get help to work the land for the last two years on account of the odor. He further testified that the rental value of Mrs. Cameron's land was $10 an acre for the dry land and $20 to $25 an acre for the irrigated land. To the same effect was the testimony of C. Earnest Burk and many other witnesses.

We think the evidence is ample to sustain that portion of the judgment that was not remitted. Anglin testified that if they had twice as much tile down there it would have taken up twice as much water.

E. C. Knox, mayor of appellant city, testified:

"The main reason we did not install additional title was we couldn't get it at the time. At the time we took it up with the tile people they said they didn't have it on hand, but they would inform us when they had it and we never received any notice about it. * * * I have not made any effort to improve conditions out there on Mrs. Cameron's land since September 23, 1929, when this suit was filed. We have not spent any money whatever since then in trying to remedy it. We do not have a nickel to spend. I do not think that because the City of Iowa Park hasn't got the money that we have a right to let this sewerage across Mrs. Cameron's land, the city hasn't got the money to spend. I do not say because of that the city has a right to run the sewer over this woman's land.'"

This testimony is cited to show that the injury to the land was a temporary one, and that in a large measure it could have been remedied had the city used diligence in attempting to handle the water and had not allowed it to run across the plaintiff's land. See City of Graham v. Moseley (Tex. Civ. App.) 254 S. W. 130, writ of error dismissed, by Chief Justice Conner of this court; City of Paris v. Jenkins, 57 Tex. Civ. App. 383, 122 S. W. 411; Town of Jacksonville v. McCracken, 232 S. W. 294, by the Commission of Appeals; City of Austin v. Bush (Tex. Civ. App.) 260 S. W. 300; City of Wichita Falls v. Sullivan (Tex. Civ. App.) 22 S.W.(2d) 982.

Appellant also urges that the trial court should have defined what constituted a nuisance, but we believe that the way the case was submitted to the jury presented the issue of nuisance properly. Appellant does not question the sufficiency of the evidence to support the finding of the jury to the effect that this water allowed to run across plaintiff's land did give off obnoxious odors. The testimony shows that appellant had no right or authority to permit this water to run into and across plaintiff's land. In the case of City of San Antonio v. Mackey, 14 Tex. Civ. App. 210, 36 S. W. 760, in an opinion by Chief Justice James of the San Antonio Court of Civil Appeals, it is said, quoting from the headnotes:

"A city is liable to the owner of property where it caused refuse matter to be deposited on his ground, thereby injuring him, though the act may not amount to a nuisance."

We conclude that the judgment of the trial court must be affirmed, and it is accordingly so ordered.