BLACK, Mayor, et al. v. LAMBERT, Com'r et al. (No. 6668.)*

(Court of Civil Appeals of Texas. San Antonio. Nov. 16, 1921. Rehearing Denied Dec. 14, 1921.)

1. Officers ⬥82—Injunction invoked to protect possession of officers, but not to try title.

The writ of injunction cannot be used to try title to an office, but can be invoked to protect the possession, even of de facto officers, against the acts of intruders upon such possession.

2. Officers ⬥82—Health officer to protect office by injunction.

A health officer of a city under commission form of government, holding over after the expiration of his term, was entitled by injunction to protect his possession of the office from one claimed to have been not duly appointed and qualified to hold the position.

3. Officers ⬥82—Officer protecting possession of office only proper plaintiff.

A health officer of a city under commission form of government alone could prosecute a suit to protect his possession of the office by injunction from one not duly appointed and qualified to hold the position.

4. Officers ⬥82—Burden rested on officer protecting office by injunction.

The burden rested on one, seeking by injunction to protect his possession of an office from one claimed to have been not duly appointed and qualified, to establish that he was lawfully in possession of the office, and that others were unlawfully endeavoring to oust him, or to interfere with him in the performance of the duties of the office, and such burden did not shift.

5. Officers ⬥82—City commissioner could prevent interference with duties by injunction.

If a commissioner of a city under commission form of government had full charge and control of matters of sanitation, and such authority clothed him alone with the power to name a physician who should have charge of the health of the city, and the mayor and other commissioners were interfering with him in the execution of his duties by unlawfully attempting to appoint a physician, injunction was the proper remedy.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused February 8, 1922.

**6. Municipal corporations ⬳191 — "Health" officer to be appointed by mayor, and not commissioner of "sanitation."**

A physician is not a necessary member or employee of the department of sanitation, parks, and public property of the city of San Antonio, since all duties of the department can be performed by a layman; the words "health" and "sanitation" not being synonymous, and the latter merely being a protector of the former. and the mayor, as chairman of the board of health, has the right to appoint the city physician, under Sp. Acts 28th Leg. (1903) c. 44, as amended by Sp. Acts 30th Leg. (1907) c. 70, and Sp. Acts 32d Leg. (1911) c. 102, and amendments adopted by the people of the city, making the mayor the head of the board of health, it being the intention of the charter to give each departmental head the right to name those as employees to whom he must look for the efficiency and success of the administration of the affairs of his department, in view of Rev. St. arts. 4540, 4541, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1096d.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Health.]

**7. Municipal corporations ⬳131—Mayor of city under commission form of government nominates all appointive officers.**

The charter of the city of San Antonio— Sp. Acts 28th Leg. (1903) c. 44, as amended by Sp. Acts 30th Leg. (1907), c. 70, and Sp. Acts 32d Leg. (1911) c. 102, and amendments adopted by the people of the city—gives the mayor the right to nominate all the appointive officers.

**8. Municipal corporations ⬳177—City authorized by ordinance to create board of health.**

Under its charter, the city of San Antonio was authorized by ordinance to create a board of health, in view of Sp. Acts 28th Leg. (1903) c. 44, as amended by Sp. Acts 30th Leg. (1907) c. 70, and Sp. Acts 32d Leg. (1911) c. 102, and amendments adopted by the people of the city.

**9. Municipal corporations ⬳131—Mayor of city need not abide by agreement to arbitrate.**

Mayor of city of San Antonio was not obligated to abide by an agreement to arbitrate, when a controversy arose between him and commissioner of sanitation as to which one had the right to nominate the public health officer; the mayor having no authority to arbitrate rights which are given by the charter of the city.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Suit by Ray Lambert, Commissioner of Sanitation, Parks, and Public Property, and another, against O. B. Black, Mayor of the City of San Antonio, and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

T. H. Ridgeway, R. L. Marshall, and John Sehorn, all of San Antonio, for appellants.

George R. Gillette and Robert J. McMillan, both of San Antonio, for appellees.

FLY, C. J. This is a suit instituted by Ray Lambert, commissioner of sanitation, parks, and public property, and Dr. W. A. King, city health officer, against O. B. Black, mayor of the city of San Antonio, William C. Rieden, commissioner of streets and public improvements, John P. Pfeiffer, commissioner of taxation, Phil Wright, commissioner of fire and police, and Dr. L. L. Shropshire, wherein it is alleged that the commission form of government was adopted in 1914, to take effect June 1, 1915, by the city of San Antonio, and that since that date the affairs of said city have been operated and conducted under such commission government; that during all the time since the adoption of such form of government until June 1, 1921, the several administrations of the city government have distributed the executive and administrative duties and powers among the several departments, and the city health officer has at all times belonged to the department of sanitation, parks, and public property, "such being the natural and lawful departmental assignment of the functions exercised by him." It was further alleged that Ray Lambert, as commissioner of that department, has "under his special charge the care and maintenance of sanitation" of San Antonio, and that the city health officer is the chief sanitary officer of the city, and is a necessary part of the department of sanitation, and that all his duties and functions appertain thereto; that said Ray Lambert has the right to propose and nominate the city health officer, and that Dr. W. A. King has been and is now the duly appointed and qualified health officer, and has the right to hold such office until his successor is duly nominated by the commissioner of the sanitation department and confirmed by the board of commissioners.

It was alleged that a controversy had arisen between Lambert and the mayor and two commissioners, one party to the controversy claiming that Lambert had the authority to nominate the health officer, and the other that the mayor had that authority, and that it had been agreed that the controversy be submitted to arbitrators, a majority of whom decided that Lambert had the right to nominate; but the mayor afterwards placed Dr. L. L. Shropshire before the board for the nomination, and by the votes of the mayor and Commissioners Rieden and Pfeiffer an attempt was made to confirm such nomination. That Commissioner Lambert then nominated Dr. W. A. King, and his nomination was rejected by a majority of the board of commissioners, and Dr. Shropshire was declared to be confirmed as city health officer. Appellees sought a temporary injunction to prevent appellants from interfering in any manner with the charge and supervision of the sanitary department, or with Dr. King in the

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

discharge of his duties, and that on a final hearing the temporary injunction be made permanent. An order was made granting a temporary injunction, and from that order this appeal was perfected.

[1-3] The writ of injunction cannot be used to try title to an office, but the remedy by an injunction can be invoked to protect the possession even of de facto officers against the acts of intruders upon such possession. Callaghan v. Tobin, 40 Tex. Civ. App. 441, 90 S. W. 328. The allegations in the petition show that Dr. King was at least the de facto health officer of the city of San Antonio, and the Constitution of Texas, in fixing the duration of all offices, not otherwise fixed at two years, also provides that "all officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified." The allegations of appellees' petition show a case of the occupant of an office holding over after the expiration of two years, under the constitutional provision last quoted, who seeks to protect his possession of the office from one claimed to have been not duly appointed and qualified to hold the position. Dr. King was undoubtedly a proper party to the suit. Indeed, he could alone have prosecuted the suit. Callaghan v. Tobin, herein cited; Callaghan v. Irvin, 40 Tex. Civ. App. 453, 90 S. W. 335.

[4] The burden, as a matter of course, rested on applicants for the writ of injunction to establish the fact that Dr. King was lawfully in possession of the office he occupied, and that others were unlawfully endeavoring to oust him or interfere with him in the performance of the duties incident to the office. This burden did not shift, but at all times rested on the applicants for equitable aid and assistance, and they are not entitled to relief, unless that burden has been assumed and fully met.

[5, 6] If, as alleged in the petition, Commissioner Lambert has full charge and control of matters of sanitation in the city of San Antonio, and such authority clothes him alone with the power to name a physician who shall have charge of the health of the city, and the mayor and other commissioners are interfering with him in the execution of his duties in connection with the sanitation of the city, this would present a case in which injunction would be a proper remedy. Under the charter the only authority, apparent or otherwise, granted to Commissioner Lambert to appoint a health officer, is paragraph 2 of section 16, which provides:

"Each member of the commission shall have the right to propose and nominate all employees in the department under his special charge, unless otherwise provided, but all such nominations shall be subject to the confirmation of the commissioners by a majority vote thereof."

No such officer as city health officer is mentioned in the charter of the city of San Antonio as contained in the Special Laws of the Twenty-Eighth Legislature (1903) p. 322, as amended by the Special Laws of the Thirtieth Legislature (1907) p. 562, by chapter 102, Special Laws Thirty-Second Legislature (1911) p. 878, and by amendments adopted by the people of San Antonio, at an election held on February 24, 1914.

No such office as city health officer being named in the charter, the nomination of him cannot be claimed by the commissioner of sanitation, parks, and public property, except on the ground that he is an employee in the department under the special charge of that commissioner. As a means of ascertaining who could be properly classed as the employees of a city department, it becomes necessary to ascertain what the particular duties of the commissioner of that department may be. These are fully and clearly set forth in the amendment of 1914, which created commission government and to which we can look for the ascertainment of such duties. In paragraph 5 of section 7 of the charter it is provided:

"The commissioner of sanitation, parks and public property shall have under his special charge the care and maintenance of sanitation. He shall have control of all parks and pleasure grounds, water courses and sewers, the city hall and market houses, with the grounds adjoining the same, and all other buildings and grounds belonging to or controlled by the city: Provided the commissioner of fire and police shall have charge of the buildings and grounds pertaining to his department: Provided, however, he shall have no control or supervision over the improvement or maintenance of streets. He shall have charge of and supervision of all cemeteries in or belonging to the city and over all property belonging to or used in connection with such cemeteries. He shall perform such duties as may be prescribed by ordinance for the maintenance and protection of all public buildings and parks and other property under his jurisdiction."

Those are the duties enjoined and the powers and authority conferred upon the commissioner in question, and it will be noted the word "health" is not mentioned therein. Sanitation is the keynote to the powers conferred upon the commissioner, as will be apparent from the fact that he has charge of the parks, pleasure grounds, water courses, and sewers. He must dispose of the garbage, see that back yards and alleys are kept clean, and in short attend to the sanitation of the city. These precautions will tend to protect the health of the citizens of the city, and the experienced commissioner of the sanitation department can attend to these duties as well without as with the assistance of a health officer, and, should he need the advice and counsel of the health officer, he can obtain them

from the city physician or health officer appointed by the mayor, just as he can obtain advice from a city attorney appointed by the mayor. In other words, a health officer is not essential to the proper care and maintenance of the sanitation department of a city. Any commissioner of sanitation should know that garbage should be rapidly collected and disposed of; that sewers should be kept in proper condition; that yards should be kept clean; that water should not be allowed to accumulate and stagnate, producing mosquitoes and flies. All these duties can be as well performed by the layman as by the man learned in medicine and hygiene, and so health or health officer is not mentioned. The words "health" and "sanitation" are not synonymous; the latter merely being a protector of the former.

Paragraph 3 of section 7 of the amendment made by the voters of San Antonio to the charter in 1914 provides that—

"The mayor shall be at the head and have charge of the department of public affairs in general and shall have the general supervision and oversight of all departments and offices, officers and employees of the city. He shall be chairman of the board of health. * * * All powers and duties not distributed or assigned to some other department are hereby assigned to the mayor."

The only mention of health, in defining the powers of department heads in the charter, is in this paragraph, and the mayor is made the chairman of the board of health. How that board is created and who compose it is not disclosed by the charter, but in all events the mayor is placed at the head of a board to whom, without doubt, the preservation and protection of the health of the city is confided, and in line with that chairmanship the mayor is given the power and authority to appoint the only medical officer named in the charter, the city physician and his assistants. Undoubtedly the mayor is placed at the head of a board that has in its keeping the health of the city, and, if he is to be held responsible for the general health and sanitation of the city, he should have the selection of the officer who shall determine the measures necessary to prevent the entrance and spread of smallpox, bubonic plague, typhoid fever, measles, diptheria, and other infectious or contagious diseases. The charter in terms gives the mayor the right to nominate the only physician named in the charter, in contradistinction to the general powers given to each member of the commission to propose and nominate all employees in the department under his special charge. The only officers that can be appointed under the city charter are those to be nominated by the mayor; all others connected with the different departments are employees; and in order to permit the physician, to whom is intrusted the health of the city of San Antonio, to be appointed, he must assume the position of an employee of a department of the city government.

It is clear that it is the intention of the charter to give to each departmental head the right to name those as employees to whom he must look for the efficiency and success of the administration of the affairs of his department; but there is nothing to indicate that the naming of the physician who has in his hands the preservation of the health of the city and the prevention and spread of disease among the inhabitants is a necessary adjunct to the department of sanitation, parks, and public property, but rather it would seem that such physician should be appointed by the chairman of the board of health, the mayor of the city.

Under an ordinance enacted in 1914, after the adoption of the commission form of government, the board of health named in the charter was provided for, to consist of four physicians, to be appointed by the mayor, and the latter and city health officer and city physician. It was required that each member of the board should be a physician, except the mayor, who by the charter was constituted chairman of the board. Section 6 designates the authority of the board as follows:

"The board of health, in addition to other powers and authority and for the purpose of improving the health and sanitary conditions of the city, shall make and establish such reasonable sanitary rules and regulations, orders and requirements, as the board may deem necessary or expedient, governing the construction, arrangement, equipment, management and conduct of slaughterhouses, slaughter pens and stockyards; bakeries, confectioneries, butcher shops and meat, fish or poultry markets; truck farms and gardens, and markets, stands or wagons for the sale of fruit and vegetables; hotels, restaurants, lunch stands and eating houses; saloons, dairies, soda fountains and bottling works; and every other and similar place, trade or business, wherever same may be located within the limits of the city, where any commodity intended for food or drink for human beings is produced, manufactured, prepared for use or for sale, sold, offered for sale or dispensed; and also governing in like manner each and every such trade, occupation or business though located without the corporate limits of the city if the product or commodities of such trade, occupation or business be intended wholly or partly to be brought into or used or sold in the city."

By that ordinance the board is given the power to formulate the rules for sanitation of the city, subject to their revocation or modification by the mayor. That ordinance created the office of city health officer and defines his duties to be those conferred by the laws of Texas and the state board of health or any state officer acting under state law, and instead of being placed under the charge and subject to the orders of the com-

missioner of sanitation, parks, and public property, he was required to perform what was provided by ordinance and by the mayor or board of health. No mention of the commissioner of sanitation, parks, and public property is made, and no recognition of his authority is given. It seems that it was expected of him to do nothing but carry out the orders of the board of health in the "care and maintenance of sanitation" emanating from the board of health created by, and presided over by, the mayor. The charter merely places "under his special charge the care and maintenance of sanitation," and does not confide in him the control, through the city health officer, of the momentous health interests of the city. He needs no learned member of the medical profession to advise .him as to best methods of executing the orders of the board of health.

In 1909 a statute (Laws 1st Ex. Sess. 1909, c. 30) was passed by the state of Texas on the subject of public health, in which a state board of health was created, and provision fully made for the general supervision and control of all matters pertaining to the health of citizens of this state, and providing for the study and prevention of contagious and infectious diseases, and to quarantine and prevent their entrance from points outside the state. Title 66, c. 1, Revised Statutes. ·In that law uniformity, harmony, and co-operation were sought from the different county and city health officers, and as a means to that end the offices of county physician and city physicians were abolished, and it was provided that they should be known as county health officer and city health officer. Article 4540 abolished the office of city physician, and instead created the office of city health officer, to be filled by a competent physician. In article 4541 it is provided:

"The city council or the city commissioners, as the case may be, of each incorporated city and town within this state shall elect a qualified person for the office of city health officer by a majority of the votes of the city council or city commission, as the case may be, except in cities which may be operated under a charter providing for a different method of selecting city physicians, in which event the office of city health officer shall be filled as is now filled ·by the city physician, but in no instance shall the office of city health officer be abolished."

That is the general law of the state, and after its passage no such office as city physician could exist in the state. The law applies to every incorporated city or town in the state, whether created by special charter or under the general law as to cities and towns, and· is now and has been since its enactment in full force and effect. When the commission government was adopted in 1914, this law was read· into and became a part of it. The statute requires the health officer to be elected by the council or com-

mission, unless a different method is provided by charter, and no different method is prescribed in the charter of San Antonio. If no nomination is prescribed in, or can be inferred from, charter or statute, then any member of the commission could propose a name, and, if he receives a majority of the commission, he· will become the duly elected city health officer. There is no apparent conflict between the charter and the statute as to the manner of electing a city health officer, both providing for his election by a majority of the commission; the only difficulty raised in this case being as to how the name of a candidate or applicant for the office can be placed before the commission.

It might be conceded, as contended by appellees, that under the authority of Vernon's Sayles' Ann. Civ. St. 1914, art. 1096d, which is denominated the "Enabling Act" to the "Home Rule Amendment" to the Constitution, the city of San Antonio had the authority to create the offices of city health officer and city physician; still this concession would shed no light on the question as to whom belonged the privilege of nominating the city health officer, for the ordinance creating the office of city health officer does not provide any method for his nomination and selection. Resort must still be had to the charter and the ordinances passed thereunder to ascertain the nominating power, for through them, if at all, the creation of officers and the manner and mode of selecting them have been prescribed. Neither charter nor ordinance , has indicated the officer who shall nominate the city health officer, but it seems more reasonable to give this power to the officer at the head of the health department, rather than to one who is merely the agent to execute the regulations of the board of health as to the matters of sanitation. The health department at all times demands the services of the health officer, while the sanitation department has its duties fully prescribed by the board of health and has the ministerial burden of performing those duties.

[7] It must be kept in mind that, if the city physician named in the charter is not the city health officer, then the city health officer is an employee under the terms of the charter and not an officer, and there is no prohibititon in the charter against the mayor appointing employees appertaining to his department, but under paragraph 2 of section 16, being a member of the commission, he would have the right to propose and nominate all employees in the department under his special charge, which is the department of public affairs in general. In addition to that power the charter gives him the right to nominate all the appointive officers who are named. Brown v. Uhr (Tex. Civ. App.) 187 S. W. 381. In that case it was held that to deprive the commissioner of fire and police of the power to appoint the chief of police and policemen could, and doubtless would,

render his department weak and inefficient. It appeals to the reason of any one that the head of the department of police and fire should have the right to select the members of his department, if he is to be held responsible for its proper functioning in the public service. This is true as to all employees of the department of sanitation, but there is no basis in charter, ordinance, or statute for the claim that the city health officer should be an appointee of the commissioner of sanitation in order to obtain more effective service from that department. Rather he should be a member of the health department under the control of the mayor and the board of health, of which the mayor is the chairman.

[8] A peculiar and anomalous condition of affairs would arise, if the health officer is an employee of the commissioner of sanitation, in that the employee as a member of the board of health would be engaged in formulating rules and regulations for the government of the commissioner in matters of sanitation. No such ludicrous and farcical state of affairs can be contemplated. Under the ordinance the duties prescribed for the health officer are independent of, and in no wise under the control of, the commissioner of sanitation, parks, and public property. The duties of the health officer are formulated and laid down by the board of health, of which the mayor is the head. There is no conflict between the provisions of the ordinance creating the board of health and the charter. It is contemplated that it shall be created.

Dr. W. A. King is in the position of city health officer by virtue of a nomination by Mayor Bell, made to the commission on June 5, 1919, and while it is alleged by appellees that the nomination was made with the approval and consent of Commissioner Lambert, the evidence does not sustain such allegation, but, on the other hand, shows that Mayor Bell made it on his own initiative. On May 23, 1921, it was sought to avoid the action of the mayor on June 5, 1919, and forestall and anticipate any action of the new administration, which was elected by the people on May 10, 1921, and was soon to assume control of affairs, by Commissioner Lambert naming Dr. King. Dr. King had been nominated by Lambert for the first time in 1916. It would seem, therefore, that the nomination of the city health officer by the commissioner has not become a precedent, as is claimed in the pleading, the facts showing the nomination of the health officer took place only twice prior to 1921, under the commission form of government, first by the commissioner and last by the mayor.

[9] However binding the moral obligation might be ordinarily to abide by an agreement to arbitrate, it could not be legally binding in this case, because the mayor has no authority to arbitrate rights which are given by the charter of the city. A court of law and equity is the only tribunal clothed with authority to decide such matters of public interest. This court adheres to its decision in the case of Brown v. Uhr, herein cited, to the effect that one of the main purposes of the commission form of government was to restrict the powers of the mayor, destroy one-man government, and to place the affairs of each department of the city government in the hands of a responsible agent who would be responsible to the people for the efficient administration of the affairs of his department. That decision, however, only holds that each commissioner has the naming of the employees essential to the administration of his department. Any expressions that might be construed into a holding that the commissioner of sanitation would appoint the city physician, if the charter had not given the appointment to the mayor, and that the mayor could nominate none except the appointive officers, were not called for by the facts of the case, and are not in keeping with the provision of the charter which gives to the mayor, as head of the department of public affairs in general, the right to propose and nominate all employees under his special charge. That the mayor is a member of the commission is fixed in paragraph 1, section 7, of the charter, which provides that—

"The municipal government of said city shall consist of a board of commissioners, composed of a mayor and four commissioners, who, together, shall be known as the commissioners of the city of San Antonio."

The only vital question, therefore, in this case, is as to the department of which commissioner should the city health officer belong, and, as hereinbefore indicated, we think he should be and is attached by the charter to the department of public affairs in general, and should be nominated by the mayor. There is no provision in the charter for a city health officer eo nomine, but, if it be held that in providing for a city physician, it was intended that he should be the city health officer, then, in terms, he is to be appointed by the mayor. If, however, the office of city health officer was created by ordinance under authority, of the Enabling Act to the Home Rule constitutional amendment that ordinance although it fails to name the officer to whom the nomination of the city health officer is confided, still, by its terms, creates the board of health, as well as the offices of secretary of the health division, city health officer, city physician, city chemist and bacteriologist, and their powers and duties defined, under the government and control of the mayor, the chairman of the board of health. In that ordinance it is provided that every appointive officer, agent, servant, and employee of the city whose duties affect or concern the health or sanitation of the city or the care of the sick or injured shall be subject to the orders of the board or the

particular department to which he is assigned. The board of health is authorized to make sanitary rules and regulations as herein copied. The section relating to the city health officer is as follows:

"The office of city health officer is hereby created, and the salary of such officer fixed at one hundred and fifty ($150.00) dollars per month. The city health officer shall keep regular daily office hours. The city health officer shall perform all the duties, and exercise all the powers and discretion, of the city health officer of this city required of or conferred on him by any laws of the state of Texas, and by the state board of health, or by any state officer acting under such state law, and in addition thereto such city health officer shall perform all such duties and exercise such powers with regard to the general health and sanitation of the city, and also such other professional and official duties as may now or hereafter be required of such officer by city ordinance or resolution, by the mayor or by the board of health, and the city health officer shall also perform all such other duties as may heretofore by ordinance have been required of the city physician: Provided, however, that the city health officer shall not be required to perform any duty which by this or any ordinance subsequent hereto, or by any order of the board of health consistent herewith, is made the duty of the city physician."

Nothing is hinted in that ordinance as to the city health officer being an employee of the commissioner of sanitation, parks, and public property, but every provision in it points to a different conclusion, and he can much more reasonably be assigned to the department of public affairs in general, of which the mayor is the head, and included in which is the board of health, of which the mayor is chairman. Logically, the city health officer should be named by the mayor, to whose department the duties of such health officer attach and appertain.

The judgment of the district judge is reversed, the order issuing a temporary injunction dissolved and set aside, and the cause remanded, for any further proceedings found necessary in the case, in consonance with the decision of this court.