## CITY OF FORT WORTH v. GEORGE.

### No. 13550.

Court of Civil Appeals of Texas. Fort Worth.

May 21, 1937.

Rehearing Denied Sept. 3, 1937.

R. E. Rouer, Geo. C. Kemble, and R. B. Young Jr., all of Fort Worth, for appellant.

McLean & Woodward and Samuels, Foster, Brown & McGee, all of Fort Worth, for appellee.

SPEER, Justice.

This suit was instituted by Mrs. Mary Virginia George, in the Forty-Eighth district court of Tarrant county, Tex., against the City of Fort Worth for damages as the result of injuries sustained by plaintiff, growing out of the alleged negligent acts of defendant.

Plaintiff's second amended petition, upon which the case was tried, discloses, so far as is necessary to dispose of this appeal, that she resided at her home on West Humboldt street in the City of Fort Worth, and that for many years her back yard, extending to the alley in the rear, had been inclosed by a solid board fence about six feet high and that there was a gate in the fence near the center, which gate was made to swing back into the alley; that she had kept and maintained gravel walks with rocks and bricks on either side, extending from her rear door steps to the gate in the fence; that, upon the occasion when she claims to have been injured, the defendant, acting through its agents and employees, was collecting garbage and refuse matter from the residences in that vicinity, and that she had placed in a receptacle near the gate her garbage, with instructions to defendant's agents to haul

it away; that on October 19, 1934, she was standing on her back porch and saw defendant's truck in which garbage was being collected pass down the alley beyond her premises without picking up the garbage placed there by her; that she immediately walked to the rear of her premises and told defendant's agents to come back and pick up the receptacle on her premises and empty it into their truck and haul it away; that, at the time she spoke to the agents in the alley, she could not see the truck nor either of the two agents of defendant because of the height of the board fence; she alleged that vines were growing on the board fence and across the gate and that she pushed the vines back and was standing there with her hand resting lightly on the gate; the gate was closed; that defendant's agents attempted to back the truck to a point opposite her premises with a view of picking up the garbage but that in so doing they negligently caused some part of the truck to strike the gate and fence, from the impact of which she was knocked and hurled backward onto the walkway and rocks adjacent thereto and violently thrown to the ground, breaking her hip and causing other serious injuries which will cause her to remain a cripple the remainder of her life.

Allegations were made of 12 separate and distinct acts of negligence on the part of defendant's agents, all contributing to and proximately causing plaintiff's injuries.

The defendant filed a general demurrer and 28 special exceptions to plaintiff's pleadings, along with a general denial and special answers that it is a city of approximately 162,000 inhabitants and was chartered under the Home Rule Act of the State of Texas, and that at the time plaintiff claims to have been injured defendant, through its agents, was collecting garbage, refuse, and other waste matters to prevent accumulations thereof and in the interest of the health and sanitary regulations provided under the law of the State of Texas and charter and ordinances of the City of Fort Worth. It specially pleaded that all of its said acts, from which plaintiff claims to have been injured, were in performance of a governmental function imposed upon it by law, and that under no condition was it responsible to plaintiff in damages for the wrongful acts of its agents in the performance of said duties.

There were special denials of the several acts of alleged negligence pleaded by plaintiff, and in this way the issues were made.

Defendant's general and special demurrers were overruled and the case was tried to a jury. At the conclusion of the testimony, defendant moved for an instructed verdict. This request was by the court overruled, to which action of the court the defendant duly excepted and has brought forward by assignments of error the ruling of the court thereon.

From the special issues submitted the jury found (1) that defendant's agents, while collecting garbage in the alley in the rear of plaintiff's property, backed the truck used by them against plaintiff's gate; (2) that the driver of the truck was negligent in causing the truck to strike the gate; (3) that the striking of the gate by the truck was the proximate cause of plaintiff's injuries; (4) that, at the time the truck struck the gate, plaintiff was standing near it with her hand resting thereon; (5) that when the truck struck the gate it was caused to be pushed inward toward plaintiff, striking her and causing her to fall to the ground in the manner complained of in her petition; (6) that as the result of her fall she sustained injuries; (7) that the driver of the truck did not know plaintiff was standing against the gate at the time he struck it; (8) that defendant's agents by the exercise of ordinary care should have known that plaintiff was standing against or near the gate at the time it was struck; (9) that the accident which caused plaintiff's injuries was not an unavoidable one; (10) that as a result of the injuries sustained the plaintiff was damaged in the sum of $10,752.95.

Upon the verdict of the jury, judgment was entered in favor of plaintiff for the sum found by the jury.

We have not attempted to enumerate plaintiff's several grounds of alleged negligence, nor the specific denials thereof by defendant, because of the view we take of this appeal. We believe the issue of whether or not defendant is responsible for the tortious acts of its agents at the time plaintiff claims to have received her injuries is determinative of the case.

The record in this case is voluminous, the transcript consisting of 238 pages, the statement of facts 216 pages, and appellant's brief 255 pages, containing 119 assignments of error. The assignments of error are covered by 15 propositions and points upon which the appeal is based.

Appellant's first proposition, based upon assignments of error 1 to 8, inclusive, and No. 22, reads as follows: "It affirmatively appearing from the record that the appellant's truck described in appellee's petition at the time and place in question was being operated exclusively for the purpose of carrying away and disposing of waste and refuse from the premises of private residences, including that of appellee, in the interest of sanitation, health and public welfare; that the service was free; that it was essential for the preservation of the health and sanitation of the public; that it was calculated to reduce the dangers of communicable diseases and contamination, it was consequently engaged in the discharge of a governmental function for which it cannot be held liable in damages."

■■ It is a well-settled rule of law in this State that the functions of a city are of a dual relation. There are some functions which are enjoined upon it by law which must be performed in obedience to the system and code of the State, and when thus acting the city becomes an arm of the state government and is not responsible for the negligent acts of its agents and employees in the performance of those duties. There are yet other functions which the city, in its discretion, may perform when considered by those in authority to be for the best interest of the inhabitants of the municipality. These functions are known as corporate or proprietary, and in their performance the city is responsible for damages incurred in the same manner as are individuals or private corporations. These principles are concisely stated in 30 Tex.Jur. p. 101, § 47, which reads:

"A municipal corporation acts in a dual capacity or double character; it is invested with two kinds of powers or functions. Its activities have relation to governmental functions performed by virtue of power conferred upon it as a legal agency of the State to be exercised in the administration of affairs affecting the people generally, or its acts are concerned with proprietary business powers granted for the special benefit of the urban community embraced within the corporate boundaries. In so far as their character is governmental, and in the exercise of governmental powers, they are agencies of the State, and are subject to state control. These functions and powers are strictly limited by the statutory provisions granting them, and are strictly construed. They

are legal duties which must be performed by the municipality at its peril. It has no option in the matter, and may not exercise or ignore such duties at discretion; and, generally speaking, it is not liable for torts committed by its officers or agents in performing them.

"Municipal or corporate functions and acts are those which are intended primarily for the private advantage and benefit of persons within the corporate limits of the municipality as distinguished from that of the general public. They are imperative in part and discretionary in part; and the municipality is liable for torts committed in performing them to the same extent as an individual would be. In general they include the proper care of streets and other public places, the erection and maintenance of public utilities and improvements, and the establishment and maintenance of a municipal band. But a prohibition of the use of city streets is the exercise of a governmental power, where its effect is to interfere with the use of a state highway which passes through the city; and the same is true of the power to provide for the improvement of harbors and the erection and maintenance of public wharves, and of the power to fix the rates to be charged by public utilities.

"Questions as to whether particular powers and acts are governmental or proprietary in character usually arise in determining the liability of municipalities for torts, and are further considered in that connection." See, also, 30 Tex. Jur. p. 524, § 289, and cases there cited.

■ We believe that, as disclosed by this record, the acts of the City of Fort Worth in collecting garbage and refuse matter from the homes of its inhabitants and the disposition of it when so collected are governmental functions imposed upon the municipality by law and are in furtherance of carrying into effect the Sanitary Code as contained in the general laws of this State.

The City of Fort Worth is organized and chartered under the Home Rule Amendment of the Constitution (article 11, § 5) and has been given powers authorized by article 1175, Rev. Civ. Statutes.

The First Called Session of the 31st Legislature, in 1909, c. 30 (now article 4414 et seq., Vernon's Ann.Civ.St.), provided for the organization and effective

functioning of the Texas State Board of Health, abolishing the previous department of Public Health and Vital Statistics, with a view to effectively improve the sanitary conditions of all parts of the State and to improve public health and to suppress the spread of diseases.

At the regular session of the 32d Legislature, in 1911 (chapter 95), the former act was amended by adding what is commonly known as the "Sanitary Code," consisting of 86 rules, all embraced in what is now article 4477, Rev.Civ. Statutes (Vernon's Ann.Civ.St.). By that amendment the State announced its general policy with reference to the enforcement of the rules for public health and sanitary improvements as a health measure.

Under article 4419 of the Statutes, it is made the duty of the State Board of Health to make a study of the causes and prevention of infectious and contagious diseases affecting the lives of the citizens within the State, providing, among other things: "The State Board of Health shall have general supervision and control of all matters pertaining to the health of citizens of this State as provided herein. * * * And shall have direction and control over sanitary and quarantine measures for dealing with all diseases within the State and to suppress same and prevent their spread."

Article 4425, Rev.Civ. Statutes, requires that each incorporated city and town within the State shall select a competent physician in connection with that branch of the city government which has to do with public health, and that in no case shall the office of such city health officer be abolished.

Article 4426, Rev.Civ. Statutes, provides that, if a city shall fail or neglect to fill the office of city health officer, then the State Board of Health shall have the power to appoint such officer and he shall serve as such until the local authorities shall fill the office in such manner as provided by charter.

Article 4430, Rev.Civ. Statutes, prescribes the duties of the city health officer. The responsibility is enjoined upon him to perform all the duties that may be required of him by general law and city ordinances with regard to general health and sanitation of his municipality. He shall also discharge and perform such duties as may be prescribed for him under the directions, rules, and regulations of the State Board of Health and president thereof. "He shall aid said State board at all times in the enforcement of proper rules, regulations and requirements in the enforcement of all sanitary laws, quarantine regulations and vital statistics collection, and perform such other duties as said State board shall direct."

By article 4432, Rev.Civ. Statutes, the State Board of Health is authorized to prefer charges against the city health officer for failure to perform the duties enjoined upon him in connection with the public health, the Sanitary Code, and the rules and regulations of the State Board of Health, and, if such charges are shown to be true, the city is prohibited from paying compensation to such health officer for any services rendered by him.

By article 4436, Rev. Civ. Statutes, it is provided, among other duties conferred upon cities, that property owners and residents within its corporate limits be required to cleanse "any house, building, establishment, lot, yard or ground from filth, carrion or other impure or unwholesome matter of any kind; to require the owner of any lot or lots within such city or town to keep the same free from weeds, rubbish, brush and any and all other objectionable, unsightly or unsanitary matter of whatever nature."

More than one test has been urged by the different courts in determining whether or not a function performed by a municipality is governmental or corporate. In some instances the rule has been applied by determining if the objective to be attained is for the use and benefit of the general public. While upon the other hand the test has been whether or not the duties are those imposed upon the city by law or whether they are voluntarily assumed by the city. We think the latter test most applicable here. If an act be one which in fact does inure to the benefit of the general public, we cannot exclude the special benefits that come to those residing within the corporate limits, for the reason they are as much a component part of the general public as are those on the outside. As stated, we believe the better rule to be applied in arriving at what are governmental functions is the one expressed in the early opinion by Judge Stayton, speaking for the Supreme Court in the case of City of Galveston v. Posnainsky, 62 Tex.

118, 50 Am.Rep. 517, where it was said: "In so far as a quasi corporation exercises powers exclusively public in their character, forced upon it without its consent, simply because the state can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against it for the negligence, or even misfeasance, of its officers, unless the action be given by an expression of the same sovereign will which arbitrarily imposed the duty."

In 1891 the Legislature enacted laws requiring local quarantines and the establishment of pest houses and places for detention of persons having or being subject to contagious diseases. Under that statute the Supreme Court, in 1901, speaking through Justice Gaines in the case of White v. City of San Antonio, 94 Tex. 313, 60 S.W. 426, held that the city was not responsible to a property owner whose hotel had been contaminated by the detention, under quarantine, of persons supposed to have been exposed to yellow fever. The contention there made by plaintiff was that the act of the city in enforcing the quarantine was a discretionary matter with it and was done for the immediate and primary purpose of protecting its own citizens against exposure to a communicable disease. In the application of the general rule, the court reasoned: "A municipal corporation proper—a city, for example—acts in a twofold capacity. Certain functions are conferred upon it in the interest of the public at large, and certain others for the peculiar advantage of its own inhabitants. For the unlawful acts of its officers in performing functions of the former class, the corporation is held, as a rule, not to be responsible; but for their torts in discharging duties of a purely corporate character the corporation is liable."

As a further reason for holding the city not responsible for the damages claimed, the court said: "The statutes of this state provide that 'all county and municipal quarantine shall be subordinate, subject to and regulated by such rules and regulations as may be prescribed by the governor or state health officer' (Rev. St. Art. 4328); and also that 'all health authorities of the state, or of any county or city thereof, shall obey the rules and regulations prescribed by the governor or state health officer' (Rev.St.art. 4330).

These provisions make the health officers of a city officers of the state, and show that in our state their functions are governmental, and are conferred in the interest of the public at large."

The case of City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.(2d) 965, 966, was an action against the city by Robison for injuries to his eyes in the use of a disinfectant known as "Pink Disinfectant Powder," such use being required of Robison by the city in connection with his services as an employee in the sanitary department of the city. The defendant city contended, as does the defendant in this case, that it was in the performance of governmental functions and was not responsible for injuries inflicted upon plaintiff while working within the scope of his duties as such employee. Judge Pierson, speaking for the court, said: "It is well settled by the decisions of this court, as well as by those in other jurisdictions, that sanitation for the public health of a city is a governmental function, and that, when a city is exercising such power, it is not liable for injuries inflicted through the negligence of its officers and employees. Whitfield v. City of Paris, 84 Tex. 431, 19 S.W. 566, 15 L.R.A. 783, 31 Am.St.Rep. 69; White v. City of San Antonio, 94 Tex. 313, 60 S.W. 426; McQuillin on Municipal Corporations (2d Ed.) vol. 6, pp. 775, 776, 784, 785, and 788. * * * It affirmatively appearing from defendant in error's petition that he was engaged in the performance of a governmental function at the time of his injury, the city was not liable, and he cannot recover."

Ballard et ux. v. City of Fort Worth (Tex.Civ.App.) 62 S.W.(2d) 594, 595 (writ refused), involved an action by Ballard against the municipality for damages as the result of an injury sustained by him from asphyxiation while working in a sewer line. The defense urged was, as in this case, that the city had established and was operating its sewer lines and system in the form of a governmental function, and hence was not liable for the negligence of its officers and employees in connection therewith. The facts before the court were practically the same as in the instant case. This court, speaking through Chief Justice Conner, said: "The established facts in the present case are that the city constructed and maintains its sewer system for the purposes specified

in the section of the charter quoted from its general revenue and without fees charged or profit. This being true as presented, we see no material distinction between the present case and that of city of Wichita Falls v. Robison, [121 Tex. 133], 46 S.W.(2d) 965, 966."

The court, in that case, followed the holdings in the Robison Case and denied relief to plaintiff as against the city. The following authorities from other jurisdictions are to the same effect as that of the Robison and Ballard cases, supra: Gorman v. City of Cleveland, 26 Ohio App. 109, 159 N.E. 136; Harris v. District of Columbia, 256 U.S. 650, 41 S.Ct. 610, 65 L. Ed. 1146, 14 A.L.R. 1471; McQuillin, Municipal Corporations (2d Ed.) vol. 6, p. 806, § 2807; Miller v. City of Palo Alto, 208 Cal. 74, 280 P. 108; Bandos v. City of Philadelphia, 304 Pa. 191, 155 A. 279; Guiseppe Scibilia v. City of Philadelphia, 279 Pa. 549, 124 A. 273, 32 A.L.R. 981; Saperstein v. City of Everett, 265 Mass. 195, 163 N. E. 757; Manguno v. City of New Orleans (La.App.) 155 So. 41.

█ It is not without much difficulty that we have reached the conclusion that the City of Fort Worth was exercising a governmental function in the collection of garbage when its agents caused the injuries complained of by plaintiff. There has been much conflict generally among the courts, even of this state, as to the limits of liability of a municipality for the negligence of its agents; but the rule is well settled that the municipality, as such, is not responsible for the negligent acts of its agents while in the performance of a governmental function. The difficulty so frequently arising is in determining when such acts are in pursuance of a governmental function. On this point, in City of Fort Worth v. Wiggins (Tex.Com.App.) 5 S.W.(2d) 761, 764, the court said: "Of course, in a general sense every function of a municipal corporation is in the interest of, and as an agent for, the public, and therefore governmental in its nature. But it is not in this broad sense that the classification exists. To be exempt, the corporation must be *performing a duty imposed upon it as the agent of the state* in the exercise of a *strictly* governmental function, *solely* for the public benefit. McQuillin Mun. Corp., § 2623. From the quotations above it is clear that the exemption from liability pertains only to those acts or functions which are performed as the agent of the state in the furtherance of general law for the interest of the public at large as contradistinguished from those acts and functions intended primarily for the benefit of that portion of the public within the corporate limits of the municipality." (Italics ours.)

Under the provisions of our statutes creating and defining the powers and duties of the State Board of Health and subordinate officers, such as city health officers, as disclosed by the statutes above referred to, the City of Fort Worth had no option in the matter of whether or not it would observe the Sanitary Code of the State and carry out the general plan to protect health and prevent the spread of diseases, as provided in the state law. In this connection it was said in the case of City of Uvalde v. Uvalde Electric & Ice Co. (Tex.Com.App.) 250 S. W. 140, 141:

"Those functions of a municipal corporation in its capacity as an agent of the state are strictly limited by the statutory provisions granting them. In the exercise of these functions the municipality is an arm of sovereignty, and its powers are strictly construed.

"This class of functions the city must perform. The city has no option. They are not to be exercised or ignored by the municipality at discretion. * * * Such functions are legal duties imposed by the state upon its creature. These duties the municipality may not omit with impunity, but must perform at its peril."

█ The plaintiff, appellee here, seriously contends that the collection of garbage and refuse matter, such as defendant was having collected at the time she received her injuries, was a corporate or proprietary function as contradistinguished from a governmental act. In this contention she is not without authority, as disclosed by some opinions even of the Supreme Court of this State. The last expression by our Supreme Court upon the subject under consideration was the Robison Case, above referred to, unless it be said that by refusing a writ of error in the Ballard Case, supra, that opinion expressed the sentiment of our Supreme Court on the subject. In both of those cases it is pointedly held that the maintenance of a sewer system is a governmental function. It is a matter of common knowledge that garbage, waste, and refuse matter from every household consists of substances which cannot be disposed of through a sewer system and it resolves itself into the ques-

tion of the best means available to dispose of such garbage and waste to bring about the same effects that are produced by the maintenance of the sewer system. Plaintiff does not complain that the city was negligent in the manner employed by it of collecting and disposing of the garbage, waste, and refuse matter thus accumulating in every household. Even though plaintiff had made such complaint, we doubt if she could have successfully shown that a better and more efficient means of its collection and disposition were available. We are unable to escape the very definite conclusion that the collection and disposition of the garbage by the means employed by the city was in pursuance of a governmental function imposed upon it by law.

Appellee cites us to many decisions of the courts of this State and some of other States which tend to support her right of recovery, but we think most of them are easily distinguishable from the cases cited by us herein.

Appellee relies mainly upon the principle announced in Ostrom v. City of San Antonio, 94 Tex. 523, 62 S.W. 909. In that case Ostrom sued the City of San Antonio for damages to a lot which the city, through its agents and employees, used for road purposes in hauling garbage, dead animals, and other refuse and waste matter from the residences throughout the city. Judge Brown, speaking for the Supreme Court in that case, announced the principles which distinguished governmental and proprietary functions performed by municipalities under the law. There are no apparent conflicts in the rule there expressed and numerous courts have followed and cited that case down to date. That case was reversed and remanded so that plaintiff could recover her provable damages for the trespass upon her property, under the circumstances mentioned. Clearly the trespass upon plaintiff's property by vehicles and dump carts of the city in the collection and disposition of the garbage was incidental to an effort upon the part of the city to regulate and control sanitation. This holding apparently is in conflict with those of White v. City of San Antonio, Robison v. City of Wichita Falls, and Ballard v. City of Fort Worth, supra, unless it could be said that the Ostrom Case, supra, which was decided in 1901, was before the passage of the act creating the State Board of Health, in 1909, and the Sanitary Code in 1911. At the time the Ostrom Case was decided and for many years prior thereto, there were and had been statutory provisions concerning public health and quarantine regulations as shown by articles 4317 to 4342a, Sayles' Tex.Civ. Statutes of 1897. However, at the time the Ostrom Case was decided, the statutory laws of the State did not enjoin upon the cities and municipalities the duty of the enforcement of sanitary regulations prescribed by state laws. In this lies, we think, the distinction as to liability as defined in the Ostrom v. City of San Antonio Case, supra, and the rule announced in Robison v. City of Wichita Falls and Ballard v. City of Fort Worth, supra. The Ostrom Case has been cited and followed many times by our courts, but mainly for the rule there announced, to the effect that cities were responsible for the negligent acts of their employees in the performance of corporate and proprietary functions, and not responsible for such negligent acts in the performance of governmental functions.

Duty impels us to follow the principles announced by our Supreme Court, and, even if the distinction which we have referred to does not exist between the reasons for the rule announced in the Ostrom Case and those given in the Robison and Ballard Cases, we believe the reasoning in the latter cases is more applicable to the facts before us than those in the Ostrom Case. They are later expressions by the same court and for that reason also we feel inclined to follow them.

Appellee calls our attention, as in support of her right of recovery, to the cases of City of Stephenville v. Bower, 29 Tex.Civ. App. 384, 68 S.W. 833; City of Coleman v. Price, 54 Tex.Civ.App. 39, 117 S.W. 905, writ refused; City of Paris v. Jenkins, 57 Tex.Civ.App. 383, 122 S.W. 411, 412; City of San Antonio v. Mackey, 14 Tex.Civ. App. 210, 36 S.W. 760. But upon examination we find that in those cases recovery was sustained upon the ground that the city maintained a nuisance as a result of the collection and dumping of garbage, dead animals, etc., at a given place, thereby rendering adjacent property less valuable. We consider there is a line of distinction to be drawn between that type of cases and the one under consideration. The laws of this State regulating public health, the Sanitary Code, and the requirements of the city's observation of such laws are designed to promote the public health and comfort of all persons, and clearly the concentration of all filth, garbage, and objectionable matter

in close proximity to private property cannot be in pursuance of sanitary measures, but indeed is the reverse.

Other cases are cited by appellee in support of her contention, which clearly involve corporate and proprietary functions of the city not in obedience to any state regulation, but those which are optional with the city and are deemed by it especially beneficial to the inhabitants within its borders; such, for instance, as City of Fort Worth v. Wiggins (Tex.Com.App.) 5 S.W. (2d) 761, which was a case growing out of injuries sustained by appellee from a vicious bear kept in a zoo in a public park. It was there held that the maintenance of the park and zoo were optional with the city, and, when it exercised its privilege to do so, it became responsible for the negligent performance of the duty assumed.

We are cited by appellee to the case of Cawthorn v. City of Houston (Tex. Com.App.) 231 S.W. 701, as being in support of her contention. In that case plaintiff received an injury by the caving of a sand bank from which he was engaged by the city to haul sand for distribution to various parts, of the city, to be used in repairing streets. The court held that repairing of streets was optional and proprietary functions for which the city would be liable for its negligence.

It has many times been held by the courts of this State that the city has the exclusive control, management, and supervision of its streets, which means, of course, that no duty or responsibility of the State, as such, may be imposed upon the general public for their maintenance. City of Dallas v. Early (Tex.Civ.App.) 281 S.W. 883, in which an application for a writ of error was dismissed, grew out of a suit against the city for improperly draining the streets occasioned by the natural waterfall. This was a voluntary act by the municipality for the exclusive benefit of the citizens residing in the city and merely incidental to the public at large and therefore could not be a governmental function.

The case of City of Wichita Falls v. Phillips, 87 S.W.(2d) 544, 546, decided by this court, in which a writ of error was denied, involved an injury to plaintiff caused by the negligent operation of a truck by one of the city's agents while plaintiff was being conveyed to a place where he was to engage in the cleaning of a street. In that case it was held that the cleaning of the streets by the city was not the performance of a governmental function but was a corporate or proprietary function, performed by the city for the use and benefit of the citizens within its own limits. There are numerous decisions by our Supreme Court, including Ostrom v. City of San Antonio, supra, and others herein cited by us, which are relied upon to support the court's holding.

The facts developed upon the trial of this case under the pleadings of all parties support the verdict of the jury that the employees of the city were negligent in striking the fence and gate of appellee, proximately causing her to fall and sustain injuries, resulting in damages for the amount found by the jury. We have concluded that it is also true that the City of Fort Worth, acting through its agents in the collection of garbage, was in pursuit of a governmental function imposed by law upon it; a duty from which it could not escape nor ignore. It must follow that no liability rests with the city for the alleged negligent acts of its employees, and plaintiff is the unfortunate victim of such a condition.

These conclusions on our part render it unnecessary to consider the merits or demerits of any other assignment of error urged by the defendant, since there appears to be no theory upon which plaintiff could recover, if we are correct in our construction of the law applicable to this case.

As we view it, this case was tried below upon the theory that the defendant was acting in its corporate proprietary capacity, and not in a governmental one, when its agents caused the injuries to plaintiff. We believe this is an erroneous construction of the law under the facts of this case. If we are correct in our conclusions, the trial court should have sustained defendant's motion for an instructed verdict. We therefore sustain the assignment of error complaining of that ruling.

Under article 1856, Rev.Civ.Statutes, if the case was tried upon the wrong theory, or if it were necessary for the jury to make additional findings of fact, it would be our duty to reverse the judgment and remand the cause. It was held in Williams v. Safety Casualty Co. (Tex.Sup.) 102 S.W.(2d) 178, that if it appears from the record there is an insuperable barrier disclosed against a recovery by plaintiff, it

becomes the duty of the Court of Civil Appeals to reverse the judgment of the trial court and render such judgment as should have been entered upon the trial.

Believing as we do that the City of Fort Worth was in the discharge of a governmental function when plaintiff sustained her injuries and that, for the reasons hereinabove set out, it cannot be held responsible for the acts of its agents in the performance of those functions, we are in duty bound to reverse the judgment of the trial court and here render judgment for the defendant, which is accordingly done.