### CITY OF MIDLAND v. HAMLIN et al.

#### No. 4694.

Court of Civil Appeals of Texas. El Paso.
April 5, 1950.

John Perkins, Jack Huff and Whitaker, Turpin, Kerr, Smith & Brooks, all of Midland, for appellant.

Klapproth & Hamilton, Midland, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Midland County.

H. H. Hamlin as plaintiff, and as next friend for his minor children Susan and Tony, sued the City of Midland as defendant, seeking damage for the alleged negligent destruction of certain personal property. Trial was before the court with a jury, submission upon special issues, judgment entered on the findings of the jury against defendant City of Midland in favor of plaintiff H. H. Hamlin in the sum of $7357.72; in favor of Tony Hamlin in the sum of $172.00; in favor of Susan Hamlin in the sum of $242.00. The City has duly perfected this appeal. Hereinafter plaintiff will be referred to as "Hamlin", the City of Midland as the "city".

It was alleged by Hamlin that while the city, pursuant to the authority granted by charter and the Statutes of the State of Texas was engaged in the business of spraying some material under a private house in the city for the purpose of killing and exterminating such insects as might there exist and be a source of annoyance to the tenants of such houses and residences, such activity being proprietory in character and a source of revenue to the city, inflicted the damages complained of.

It was further alleged on or about August 13, 1948, plaintiff Hamlin with his family occupied as a residence a part of a duplex apartment house in the city of Midland, the other apartment of said duplex being occupied by John F. Mitchell. Prior to August 13th said Mitchell arranged for the city to spray in and under said duplex apartment. The city undertook to so spray under and in said apartment. It is averred the city negligently performed and carried on such spraying operations; that while so doing or just as same were completed the duplex exploded and burned destroying sundry personal property therein belonging to plaintiffs.

Defendant city answered by sundry special exceptions, general denial, and among other defenses plead in substance that on the date in question the city and its surrounding communities was threatened with an epidemic of polio; that for the purpose of preventing such epidemic the employees of the city and its equipment

were made available on request to conduct such spraying operations of the houses for the inhabitants; that for the use of such equipment and the city's employees in so spraying and disinfecting a house a charge of $3.00 was made.

It is thought necessary in a general sort of way to state in substance as shown by the evidence the facts out of which this action arose. In 1947 the Midland Junior Chamber of Commerce supplied funds with which to purchase a D.D.T. fogging machine for the city of Midland. This machine became jointly owned by the cities of Big Spring and Midland. It was jointly used and shared by the two municipalities, each being entitled to the use of the machine for about two weeks in a given month. The purpose of the use of D.D.T. is to eliminate rodents, insects and those things that foster germs and disease. Its use is general and it is used by sanitation and health officers to abate and control conditions ordinarily associated with disease. The city of Midland sold said spraying or fogging machine to the city of Big Spring, took the funds arising therefrom, augmented by funds of its own and purchased a "Todd Fogging Machine". This new machine was purchased in 1948, and the formula for its use was supplied by the State Department of Public Health. The formula consisted of a mixture of 17½ pounds of D.D.T., 3 gallons of kerosene and 50 gallons of fuel oil, and air. This compound was heated in the machine, producing a fog or smoke, which fog was blown or sprayed through a hose running from the machine to the premises to be disinfected.

The machine being used on the premises involved was in general used to disinfect the streets and alleys of Midland, and the town's two water plants and air field properties. In July of 1948 the machine with its formula and compound was made available for private premises on request with payment of a $3.00 service charge. About 108 private premises in the city had been disinfected by the D.D.T. fog and spray method. The premises involved in this suit represented the city's 109th fogging operation on private premises in

Midland. On August 13, 1948, the building in which Hamlin lived, on the request of the tenant in the other part of the building (Mitchell) was sought to be sprayed and disinfected. The hose connecting with the machine was placed under the portion of the building occupied by Hamlin. During the course of the spraying operations or at their close there was an explosion and fire; the house was totally wrecked and the personal property therein belonging to Hamlin and his wife and children destroyed, to his substantial damage. The verdict upon which the judgment was rendered was substantially as follows:

The City of Midland was negligent in the manner in which it carried out the operation of spraying on the occasion in question; that such negligence was a proximate cause of the explosion in question. It further found the value of the household goods belonging to Hamlin in the house and which were destroyed by said explosion, further acquitted Mrs. Hamlin, the wife of plaintiff, of contributory negligence; that the destruction of the personal property was not the result of unavoidable accident.

On pre-trial procedure Hamlin made request on the city for certain admissions. In response thereto it was admitted, among other things, that the city of Midland when carrying on its spraying activities was acting pursuant to the authority granted it under the law; that the spraying operations were carried out through authorized agents, servants and employees of the city of Midland; that its employees were acting within the scope of their employment at the time the dwelling house was sprayed; that the formula for the spray being used by the city of Midland was the result of a mixture of air, D.D.T., kerosene and fuel oil; that the mixture used resulting in the fog was 17½ pounds of D.D.T., 3 gallons of kerosene, 50 gallons of fuel oil, which when heated formed a spray or smoke which went under the dwelling house in question; that as the spraying operations were completed the dwelling house caught fire and the house exploded. Such admissions were introduced in evidence by Hamlin.

The city has several assignments of error. The first is that the court erred in overruling and not sustaining appellant's motion for judgment non obstante veredicto. If this point be sustained it disposes of the case. The city at the close of evidence moved for an instructed verdict. This motion was refused by the court and after the verdict was returned by the jury moved for judgment non obstante veredicto. Ground for the instructed verdict as well as of the motion non obstante veredicto was in substance that the city in conducting the spraying operations acted in a governmental capacity, and thus acting it was not responsible for negligent acts or omissions of its officers, servants or employees. It was urged in the trial court and is urged here that the spray was in the interest of the health of the general public and constituted sanitation.

■ The factor of the proper disposition of this assignment is a determination of whether the activity in which the city was engaged at the time Hamlin's property was destroyed was in a governmental or a proprietory capacity. If in a governmental capacity the assignment is good and the judgment should be reversed and rendered. If in a proprietory capacity the assignment should be overruled. A city acting in a governmental capacity is not responsible for negligent acts and omissions of its servants and employees. Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965; City of Fort Worth v. George, Tex.Civ. App., 108 S.W.2d 929 (wr. ref.); Dilley v. City of Houston, 148 Tex. 191, 222 S.W.2d 992 and authorities cited. The proposition that a city is liable for the negligent acts of its representatives when acting in a proprietary capacity is sustained by the authorities above cited. See also City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259.

■ A city is but a governmental subdivision of the State. When it discharges duties imposed upon it by the State is acts for the State and acts in a governmental capacity. When it acts for the benefit of those within its borders only it acts in a proprietory capacity.

The case of the City of Houston v. Quinones, supra, and Dilley v. City of Houston, supra, are examples of when a city is acting in a proprietory capacity, and hence liable for the acts of its agents and employees. In each of these cases numerous cases are cited illustrating when a city acts in a governmental capacity and when in a proprietory capacity. In each rules are laid down for the determination of this question.

■■ In the case of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965, 966, it is said: "It is well settled by the decisions of this court, as well as by those in other jurisdictions, that sanitation for the public health of a city is a governmental function, and that, when a city is exercising such power, it is not liable for injuries inflicted through the negligence of its officers and employees." This case was tried throughout on the theory that the city in conducting these fogging or spraying operations was acting lawfully. Appellees so plead. They introduced in evidence the admissions of defendant to that effect. If the operations of the city had been unlawful then it was ultra vires. This fact would have been fatal to their recovery. City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872. In this case Judge Smedley was Commissioner and wrote the opinion, which was adopted by the Supreme Court. The case further lays down the principle that the character of a city's operation of its hospital is not changed from governmental to proprietory by the mere fact that it makes a charge and receives pay.

In the case of Gartman v. City of McAllen, 130 Tex. 237, 107 S.W.2d 879, 880, it is said: "The fact that the city was not required to establish and maintain a hospital but voluntarily exercised the power does not change the nature of the power. The maintaining of such hospital was the exercise of a power conferred upon the city for a purpose essentially public, a governmental function, and was not the performance of a work quasi public in character undertaken and intended for the private advantage and benefit of the locality and its inhabitants."

In the prosecution of this work the city used employees of the Health and Sanitary Department; used, it is presumed, supplies purchased by the city. The immediate purpose was to destroy flies, insects and vermin in and around private houses within the city. It might well be that the prevention of breeding of flies and other vermin in and about a house would be as much in the nature of sanitation as the collection of garbage. Rats and mice, for instance, are governed by no sanitary code; such vermin are known breeders of disease. The activity of the city aided and abetted the inhabitants in a war against infection and disease. Most of those availing themselves of this service had not perhaps the instrumentalities necessary to perform same for themselves; had not the skill and ability to conduct the operations. It is thought that judicial notice may be taken of the fact that flies, insects and vermin spread disease; a house infested with bugs, flies or vermin could not well be described as in a sanitary condition. Fumigation in the manner attempted by the city would tend at least to restore a dwelling to a sanitary condition; in effect the city aided and abetted a voluntary attempt to achieve a sanitary condition within its borders. The consequences of an unsanitary condition may have well extended beyond the borders and limits of the city.

By Act of the 49th Legislature, p. 234, chap. 178, a minimum sanitary code was prescribed by the State. This Act appears as Art. 4477-1, V.A.C.S., in Section 1 thereof, sub-section j. The word sanitary is defined: "Any condition of good order and cleanliness which precludes the probability of disease transmission."

Section 2, Sub-sections a, b and j thereof provide:

"(a) Any and all of the following conditions are hereby specifically declared to be [public] nuisances dangerous to the public health;

"(b) Any condition or place allowed to exist in populous areas which constitutes a breeding place for flies;

"(j) Any place or condition harboring rats in populous areas".

Section 3, sub-section (a) provides: "Every person, possessing any place in or on which there is a nuisance shall, as soon as its presence comes to his knowledge, proceed at once and continue to abate the said nuisance."

See also Statutory requirements as to public health as set forth in case of City of Fort Worth v. George, Tex.Civ.App., 108 S.W.2d 929.

Sanitation is a protection of the public health. Black·v. Lambert, Tex.Civ.App., 235 S.W. 704 (Wr. Den.).

As has been heretofore stated, if the spraying of private houses was only for profit the action would have been ultra vires, and the city not liable therefor. City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872.

We have been unable to find any ordinance, statute or constitutional power that would authorize the City of Midland to engage in this activity for any other reason or purpose than to protect the public health. It is true that the area they could disinfect was limited. This was true as to spraying the alleys, the streets and municipal airport. Those occupying residences in the city have a powerful motive to make and keep their residences sanitary, the motive of preservation of their own health and the health of their neighbors. The charging of this trifling fee may be and perhaps was the only practical way to achieve these measures of sanitation.

It is ordered that the judgment of the trial court be reversed and judgment is here rendered that the plaintiff take nothing by his suit.

McGILL, J., concurs in this disposition.

SUTTON, J., dissents therefrom.

SUTTON, Justice (dissenting).

I am unable to agree with the majority in the conclusion the City in this case was

164

engaged in a governmental function. The spraying operations performed were purely optional and voluntary on the part of individual citizens within the City and were made on request only for the service charge of $3.00. The evidence discloses there was but a trifling profit earned from the charge and the City did not engage in the project for profit. There was no ordinance or law or regulation which required individuals to spray or otherwise rid their premises of insects or vermin thought to be detrimental to the public health, so far as the record discloses. The City did not undertake to determine whether or not there existed any need for the spraying, nor did it through any official advise or suggest it. The matter of whether premises were sprayed or not was left entirely to the determination of the individual. A comparatively small per cent of the entire number of private residences were sprayed. The evidence indicates the spraying was done in the better sections of the residential area of the City. It seems to me the spraying was primarily for the benefit of those individuals who requested it and if any benefit accrued to the public at large it was purely incidental. Partial spraying here and there could hardly result in any general benefit to the public, or result in any substantial protection to the public health, unless it were determined only those sprayed for some reason because of the presence of dangerous insects or conditions necessitated the spraying. It is my conclusion this operation was not governmental in nature.

The rule stated by McQuillin on Municipal Corporations that a municipality is exempt from liability when it performs a duty imposed upon it as the arm or agent of the state in the exercise of a strictly (or purely) governmental function solely for the benefit of the public has been many times approved by the courts of this State. City of Amarillo v. Ware, 120 Tex. 456,

40 S.W.2d 57, at page 60, pars. (3-4) and the cases there cited, and the very late case of Dilley v. City of Houston, 148 Tex. 191, 222 S.W.2d 992 (T) and the authorities there cited. It is also settled law that the sanitation of a city is a governmental function and when it is thus engaged it is not liable for the negligence of its officers and agents, City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965 and the authorities cited, but the function must be strictly governmental and solely for the benefit of the public. As is heretofore pointed out the spraying operation here is thought not to be strictly governmental and solely for the benefit of the public, but primarily for the benefit of the limited number of citizens of the City, and if the public was served at all it was purely incidentally so. It is thought to be obvious many activities of a city are in a way sanitary in their nature but the benefits local. The cutting of weeds and grass along a street works certain sanitary results but such an operation is not governmental and purely for the benefit of the public. As is suggested by the appellee in his brief if it were strictly public in its nature there could hardly be any justification for the service charge, because a limited number of individual inhabitants and citizens should not be required to defray the expense of a purely public service.

It is my conclusion this case should be reversed and remanded because of the failure of the court to submit to the jury appellant's Special Requested Issue: "Do you find from a preponderance of the evidence that the fumigating fog exploded on the occasion in question?"

In my opinion it was essential to have the jury determine what it was that exploded and caused the collapse and destruction of the house and the contents thereof, and that the evidence raises the issue as to whether or not the explosion of the fumigating fog was.